UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MILDRED COLLINS-WILLIAMS as administrator of the estate of Tijuana Frazier and guardian and next friend of Quanisha Holt, a minor, and PEBBLES MCCLAIN as guardian and next friend of Julian Frazier and Isaiah Frazier, minors, <br><br> Plaintiffs, <br><br> v. <br><br> CONTOUR EASTWYCK LLC, <br><br> Defendant. | CIVIL ACTION NO. 1:20-CV-3129-CAP |

## DECLARATION OF MICHAEL RAFI
## IN SUPPORT OF FEES SUBMISSION

I, Michael Rafi, declare as follows:

1.      My name is Michael Rafi, I am over the age of eighteen, and am competent to provide the following testimony based upon my personal knowledge and on business records maintained by my law firm, Rafi Law Firm LLC. This declaration is being presented in the case of *Mildred Collins-Williams, et al v. Contour Eastwyck LLC*, for all purposed permitted under law, and specifically to

support an award of attorneys' fees caused by the defendant's discovery abuses as recognized by the Court in the December 15, 2022 Sanctions Order [Dkt. 220].

2.      This declaration only addresses legal work performed and attorneys' fees related to the matters listed by the Court in its Sanctions Order.  It does not address litigation costs and expenses, plaintiffs' damages in general, or future anticipated attorneys' fees, costs, and expenses.

3.      Under the Contingency Fee Contract between plaintiffs and Rafi Law Firm LLC, all amounts recovered, including attorneys' fees ("gross total recovery" as per the Contract), will be shared among plaintiffs and Rafi Law Firm LLC, subject to the Contract and Court approval.

## **Reasonable Hourly Rate**

4.      In January 2016, I founded Rafi Law Firm LLC (the "Firm") and have remained its owner since its founding.   I am the sole owner and only partner and have always been. The Firm specializes in personal injury cases from the plaintiff's side, specifically as to trucking and other automobile accidents, wrongful death and injuries, and suits arising from damages as a victim of crime.  On an average yearly basis, the Firm spends the majority of our time on negligent security cases.  The Firm currently consists of myself and three attorneys, Chris Stokes, Alan Stagmeier, and

Alex Brown, along with five paralegals / support staff. At certain points between 2020 and present, we have had as many as five total lawyers and 7 support staff.

5.    In 2008, I graduated from Furman University with a Bachelor of the Arts, *cum laude*.  While at Furman, I was a Mock Trial Team Captain and worked for U.S. Senator Lindsay Graham and a cable news television station.

6.    I graduated from the University School of Law in 2011, *cum laude*. While in law school, I competed on the school's national mock trial and moot court teams, including winning the Talmadge Moot Court Competition, winning the Beaird Mock Trial Competition, and being named the 2011 Graduating Class Outstanding Mock Trial Advocate.  I was a member of the Georgia Journal of International & Comparative Law, and was a pupil (and later a barrister) in the Joseph Henry Lumpkin Inn of Court (now the Clarke-Carley Inn of Court).  I was also inducted into the National Order of the Barristers.

7.    Prior to graduating law school, I clerked in the Knox County District Attorneys' Office (summer of 2009), I clerked for Judge John McClarty on the Tennessee Court of Appeals (summer of 2009), and I clerked for the law firm of Troutman Sanders LLP (now Troutman Pepper) (summer of 2010).

8.    After graduating law school, I became an associate at Troutman Sanders LLP, focusing on complex litigation and product liability litigation.  While

an associate at Troutman Sanders, I was selected as the firm's "Legal Aid Fellow" for my work fighting for low-income individuals whose landlords illegally evicted them or forced them to live in unsafe conditions in conjunction with Atlanta Legal Aid. When I left Troutman Sanders LLP as an associate, my time was billed at $460-560 per hour depending on the client, subject matter, and geographic region.

9.      In 2014, I left Troutman Sanders to join Law and Moran and switched my practice focus to personal injury work.  Thereafter, I joined Butler Tobin LLC (which later split to Butler Law Firm and Tobin Injury Law) in 2015, as of counsel, continuing my focus on plaintiff's personal injury work.  In 2016, I founded the Firm, where I have practiced continuously through the current day.

10.      I have been named a Super Lawyers Rising Star and nominated to the Georgia Trend Legal Elite annually from 2016 through 2023.

11.      I have given more than twenty-five presentations, webinars, and CLE presentations since 2016, covering topics including jury selection, preparing and analyzing personal injury litigation, working with expert witnesses in personal injury litigation, how to prepare for different stages of trial, and managing a law firm.  I have also been published five times, including in the Atlanta Bar Association's Litigation Section's *The Litigator*, the Georgia Bar Association's *The YLD Review*, and the *Verdict Magazine*.

4

12.    I have held multiple leadership positions in legal organizations, including serving as the Past President of the DeKalb County Bar Association; a past board member for the Atlanta Bar Association's Small Firm Section; a past board member for the State Bar of Georgia's Young Lawyers Division; a past board member for the Georgia Trial Lawyers Association, Young Lawyers Division; a past co-chair of the State Bar of Georgia's Young Lawyers Division CLE Committee; and am currently a board member for the University of Georgia School of Law Alumni Council.

13.    Alex Brown of my firm also performed substantial work on this matter. Mr. Brown has handled complex personal injury matters his entire career, focusing on negligent security and commercial motor vehicle cases.  He has always worked on the plaintiff's side and has tried approximately 20 cases to verdict.  Mr. Brown earned his undergraduate degree from the University of Alabama in 2008 and his law degree from the University of Alabama School of Law in 2011.  While in law school, Mr. Brown was a member of multiple national trial advocacy teams and was the recipient of the George Peach Taylor Award for Trial Advocacy.  Following law school, Mr. Brown began practice with Morgan & Morgan, P.A., the largest personal injury firm in America, and from 2016-2018 served as the managing partner for that firm's Alabama and Pensacola, Florida offices, overseeing the opening of three

offices and managing a staff of approximately 30 employees until voluntarily leaving the firm. Mr. Brown has been recognized as a Mid-South Super Lawyers Rising Star. Mr. Brown is currently licensed to practice in the states of Georgia and Florida, and was licensed to practice in Alabama until placing his Alabama license on voluntary inactive status at the beginning of 2023. Mr. Brown is an active member in the Georgia Trial Lawyers Association.

14.     Christopher Jackson also performed work on this matter while at the Firm. Mr. Jackson earned his undergraduate degree from the University of Alabama in 2011, and his law degree from Emory University in 2014. While in law school, Mr. Jackson participated in the Emory School Law Moot Court Society, including earning the Top Oralist designation in an Intraschool Competition in 2012. After graduating law school, Mr. Jackson served as a legal fellow to Justice David E. Nahmias on the Supreme Court of Georgia. Mr. Jackson next practiced criminal defense law at Lister & Holt, LLC, including multiple jury and bench trials. Mr. Jackson practiced at Drew Eckl & Farnham and Insley & Race LLC, defending medical malpractice, other personal injury, and worker's compensation claims. From December 2018 through June 2021, Mr. Jackson practiced with the Firm, including working on the instant matter. Since June 2021, Mr. Jackson practiced at Bader Scott Injury Lawyers and now Northover Law Group, continuing to handle

6

personal injury from the plaintiff's side.  Mr. Jackson was recognized by the Super Lawyers Magazine as a Rising Star in 2020, 2021, and 2022.  Mr. Jackson has been an active member of multiple bar and professional organizations.

15.    The Firm paralegal providing the majority of the work on this matter during the relevant time frame is Kacie Butcher.  Ms. Butcher has an associate's degree in paralegal studies and a bachelor's degree in legal studies.  Ms. Butcher has been working as a paralegal since 2005.

16.    As with the majority of the cases handled by the Firm, this case was taken on a contingent fee basis.  The agreed fee percentage is forty-five percent (45%) of any recovery now that a lawsuit has been filed.  A true and correct copy of the fee agreements are attached hereto as Exhibit 1.  This is a standard contingent fee for negligent security personal injury cases in the Atlanta market.[1]

17.    The fee agreement in this case also provides for an agreed upon hourly rate if the attorney-client relationship is terminated for any reason prior to recovery. In such an event, the plaintiffs have agreed to pay the Firm $450 an hour for my time and $300 an hour for the time of all other attorneys at the firm performing services

---

[1] Plaintiffs are not asking the Court to award attorneys' fees under the contingency fee section, and therefore I will not explain all the reasons why the 45% fee is reasonable. Plaintiffs addressed this issue in their Motion to Approve Partial Settlement and will expand further in future briefing related to that matter.

for this matter.  Ex. 1 at 2-3.  Time worked by support staff is to be compensated at $100 an hour.  Ex. 1 at 3. The Firm has increased our rates two times since we began working on this matter.

18.    All but one of my cases since I joined the plaintiff's bar have been taken on a contingent fee basis.  In 2020, I accepted representation of a defendant in a wrongful death case where I charged and was paid $450 an hour. Under the contract, other lawyers at my firm billed at and were paid $325 an hour.  The issues presented and complexity of the matter were easier, more simplistic, and less time consuming relative to those at issue in this case.

19.    In 2022, I was retained as an expert witness in *Brown v. Blankenship*, State Court of Gwinnett County, case no. 17C-4804-4, providing testimony regarding plaintiff's medical funding in personal injury cases.  I was compensated $500 per hour for my time working on the matter. The defense in that case contested my expertise, and the trial court ruled that I was a qualified expert in the area of my testimony.

20.    The Firm continues to enter into virtually all of its fee arrangements on a contingent fee basis, but in agreements entered into during 2021 and 2022, the agreed upon hourly rate in the case of termination increased to $600 per hour for my time and $500 per hour for other attorneys' time.  The primary reasons for increasing

the hourly rate for my time was the success of the firm by way of results, which made my time more valuable, and my decision to focus on complex and high value injury claims, rather than be a one-stop-shop plaintiff's firm that handles a wide variety of case types and injury types. The primary reason for increasing the hourly rates for other attorneys' time was that I hired much more senior and experienced lawyers, Alex Brown being one of them, compared to past lawyers I had employed. As of January 2023, the Firm's engagement agreement sets the termination rates at $800 per hour for my time and $650 per hour for other attorneys' at the Firm.

21.     I understand that in the matter of *Sledge v. Quiktrip Corporation*, State Court of Fulton County, case no. 17EV000692, Gray, Rust, St. Amand, Moffett & Brieski, LLP filed an affidavit that their paralegals bill at $150 per hour.

22.     Based upon my understanding of the market, the complexity of the facts and law involved in premise liability security cases, the work performed in this case, and my experience and skill set, I believe the contractual rates of $450 per hour for my time, $300 per hour for other attorneys at the Firm, and $100 per hour for staff is below the market for lawyers of similar education, experience, and success.  I believe that the rates of $600 for my time, $500 for other attorneys at the Firm, and $150 per hour for staff, for work performed during 2021 and 2022 is fair, reasonable, and in line with market rates.

**Time Spent**

23.    As with most firms who bill almost exclusively on a contingent fee basis, the Firm does not maintain detailed billing records or time entries.  However, I have reviewed the Firm's records to reconstruct the time spent at various stages of the matter, and set forth herein a conservative estimate of the time spent at each relevant stage.   The Firm records reviewed to reconstruct our time include: emails and other written correspondence; pleadings and other filings; calendar entries; attorney and staff notes; discovery documents, and depositions.  I have personal knowledge of the work done by others at this Firm on this matter because I oversaw their work, reviewed their emails and documents, and have personal knowledge of the time spent and practice of each attorney working under me on any given matter. The below descriptions of work and time spent are based upon my review of Firm documents, limited only to the work caused by, rendered useless by, impacted by, or necessitated because of defendant's sanctioned conduct as per the Court's Order.

24.    Attached as Exhibit 2 is an itemized recreation of time entries for the attorneys on this matter, limited to the work caused by, rendered useless by, impacted by, or necessitated because of defendant's sanctioned conduct.  In places, the entirety of the time to complete a lengthy task, such as drafting a motion or brief,

is allocated to one day (the date of completion) even though it may have occurred over a few days.

25.    During October 2020, I drafted a second set of request for production of documents to Defendants caused by defendant's improper initial responses. I also communicated on more than one occasion with defense counsel Perniciaro regarding former Contour employees and the employees' files. The total time spent on these actions during October 2020 was 0.7 hours.

26.    During November 2020, I prepared Wendal Johnson for his deposition, which was necessitated because Contour claimed Mr. Johnson did not work at Contour even though he did. I had multiple communications with defense counsel Perniciario regarding Mr. Johnson and his work for Contour, including sending documents relating to the same. On November 11, 2020, I took the deposition of Mr. Johnson which occurred between 10:15 am and 2:20 pm. The total time spent during the month of November 2020 on these matters was 9.8 hours.

27.    During December 2020, I had correspondence with defense attorney Perniciario regarding Contour's latest production of documents and reviewed the production. I also researched Contour employee and resident Elease Gareard. The total time spent during the month of December 2020 on these matters was 1.4 hours.

28.     During January 2021, after receiving Contour's motion for summary judgment, I analyzed the arguments being made and researched relevant facts and law.  I had lengthy communications with defense attorney Perniciaro regarding defendants' insufficient and false discovery responses and Contour's motion for summary judgment.  I also had Mr. Jackson conduct research to aid in the preparation of the response to Contour's motion for summary judgment, and Mr. Brown assist in locating Antoinette Narcisse in hopes of speaking with her.  The total time spent during January 2021 by me on these tasks is 8.4 hours.  The total time spent by Mr. Jackson during this month on these tasks is 6.0 hours, and 1.0 hours by Mr. Brown.

29.     During February 2021, in response to Contour's claim that CEO Pete Dedvukaj could not be deposed, I spent time researching the issue and had multiple correspondence with defense attorney Perniciaro.  During this month, I had multiple communications with defense attorneys regarding Contour's insufficient production of information and response regarding current and former employees, and their employment files.  We also had multiple discussions regarding whether defense counsel represented former employees, including Keith Thurman (a security guard for Eastwyck), and conflicts between publicly available information (such as social media posts) and defendants' discovery responses.  I also had multiple

correspondence, by email and phone, with both defense counsel Perniciaro and Moffett regarding their refusal to abide by agreements to resolve discovery disputes, outstanding discovery, and deficiencies. The total time I spent on these matters during February 2021 is 17.1 hours.

30. During February 2021, Mr. Brown also performed work necessitated by defendant's improper conduct, including working to locate and speak with Ashelynn Burt-Jones and ultimately speaking with her regarding her work at Eastwyck, reviewing information received from witnesses to date and creating a plan for conducting further discovery and how to locate and contact them. Mr. Brown also prepared for and conducted interviews of Antoinette Narcisse and Jori Jones regarding their work at Contour Eastwyk. Throughout the month, Mr. Brown was assisted by Firm paralegals in searching for and locating witnesses to speak with regarding the underlying facts- contact information which should have been provided by defendant. The total time spent on these tasks by Mr. Brown was 11.3 hours. The total time spent by Firm paralegals was 3.5 hours.

31. During March 2021, Mr. Brown conducted a discovery meet and confer with defense counsel Perniciaro, and then had multiple follow up communications with him relating to defendant's lack of compliance with the agreement reached

during the meet and confer.  The total time spent by Mr. Brown on these tasks during this month was 2.2 hours.

32.  During April 2021, I met with Mr. Brown to discuss strategy and analyze the most important facts in preparation for the depositions of defendant's Rule 30(b)(6) witnesses and to prepare for those depositions.  Mr. Brown spent time during the month reviewing documents and preparing witness outlines for the depositions of the defendant's Rule 30(b)(6) witnesses.  Mr. Brown conducted an interview of former defense employee Cameron Walker.  Mr. Brown conducted the depositions of defense Rule 30(b)(6) witnesses Nora Prekelezaj and Latasha Dia.  Mr. Brown researched and drafted the motion to compel the deposition of Pete Dedvukaj because defendants continued to contend he was not subject to deposition.  And Mr. Brown also engaged in multiple communications with defense attorney Perniciaro regarding defendant's search of emails.  The total time I spent on these matters during April 2021 is 8.8 hours, the total time Mr. Brown spent on these matters is 48.6 hours.

33.  During May 2021, Mr. Brown had multiple substantive email exchanges and phone calls with defense attorney Perniciaro regarding defendant's email search, defendant's deficient response to requests for production of documents No. 68-70, plaintiffs' desire to depose Pete Dedvukaj, and a potential extension of

the discovery period.  Mr. Brown conducted research for and drafted the motion to compel ESI.  When defendant finally produced certain emails at the end of the month, Mr. Brown then reviewed those emails and drafted the Third Set of Requests for Admissions to defendant and communicated with defense counsel regarding their response to the Seventh Set of Requests for Production of Documents.  Mr. Brown also prepared for the deposition of Antoinette Narcisse.  During May 2021, I had discussions with Mr. Brown in which we would analyze and strategize for how to respond to and enforce defendant's discovery obligations and assisted him in preparing for Ms. Narcisse's deposition.  I also had communications with defense counsel regarding their deficient discovery responses and made substantive edits and additions to the Motion to Compel ESI briefing.  The total time I spent on these matters in May 2021 was 5.0 hours.  Mr. Brown spent a total of 27.5 hours on these tasks during the month of May 2021.

34.    During the month of June 2021, Mr. Brown conducted a telephonic meet and confer with defense counsel Perniciaro regarding defendant's deficient discovery responses.  On June 1, 2021, Mr. Brown conducted the deposition of Antoinette Narcisse from 8:59 am through 10:51 am, and on June 10, 2021, he conducted the deposition of Pete Dedvukaj from 10 am through 2:22 pm.  Mr. Brown spent time preparing for the deposition of Mr. Dedvukaj, and analyzing further

discovery needs after the deposition.  Both Mr. Brown and I reviewed the defendants' response to the Motion to Compel ESI.  Mr. Brown conducted research and prepared the Reply to the Motion to Compel ESI, and I provided substantive edits and additions to the brief.  We both read and analyzed the Court's Order on the Motion to Compel ESI and performed analysis to determine a set of search terms for defendant to run.  We both reviewed defendant's response to the Third Set of Requests for Admission, and had communications with defense counsel Perniciaro regarding the deficient responses, as well as regarding potential witnesses.  Mr. Brown conducted research regarding the Municipal Court Contour cases, which we later used to show that defendant had not disclosed witnesses and that Pete Dedvujak had in fact communicated directly with tenants, something he claimed not to have done as a reason for us to not be allowed to search his email, and performed analysis as to their relevance to the pending claims.   The total time I spent on these tasks during June 2021 is 8.8 hours.  The total time Mr. Brown spent on these tasks during June 2021 is 41.9 hours.

35.    During the month of July 2021, Mr. Brown prepared for the deposition of expert witness Michael Hodge, and took the deposition of Mr. Hodge on July 8, 2021 from 10:02 am through 4:02 pm.  Mr. Brown also prepared for a telephonic interview of Gabriel Eskridge.  Mr. Brown reviewed additional emails produced by

defendant and had several correspondence with defense counsel Perniciaro regarding the produced emails and defendant's email searches.  Mr. Brown researched and drafted the Motion to Compel Forensic Inspection.  Mr. Brown has multiple correspondence with defense counsel Perniciaro regarding defendant's email search, and then reviewed emails as they were produced by defendant.  We both reviewed and analyzed the Court's Order on the Motion to Compel Forensic Examination and the defendant's Certification in Response to the Order.  Mr. Brown reviewed and analyzed the rebuttal expert report of Karim Vellani, and corresponded with defense counsel Perniciaro regarding the forensic examiner.  We both reviewed and analyzed defendant's Response to the Motion to Compel Forensic Inspection, Mr. Brown researched and drafted the Reply brief with me providing substantive edits and additions to the Reply.  We both reviewed and analyzed defendant's Motion to Strike Plaintiffs' Reply to the Motion to Compel Forensic Inspection, and the Order setting a hearing on the motion.  Mr. Brown also researched and read transcripts of expert Vellani's testimony in other matters.  I had multiple correspondence with defense counsel Perniciaro regarding the protocol for defendant's email search.  I also developed and modified our discovery strategy throughout the month based on additional information learned and discussions with defense counsel.  I identified deficiencies regarding defendant's privilege log,

missing documents relating to security guards, and other indicia of missing documents and emails. The total time spent by Mr. Brown on these tasks during July 2021 was 84.5 hours. The total time I spent on these tasks during the month of July 2021 was 20.5 hours.

36.    During August 2021, both Mr. Brown and I had multiple substantive communications with defense counsel Perniciaro regarding the search protocol for defendant to use in the email search and forensic search, plaintiffs' reservation of rights regarding information not disclosed during discovery, and defendant's second supplemental discovery responses to the First Set of Interrogatories. Mr. Brown prepared for and conducted the deposition of expert witness Karim Vellani, which occurred on August 5, 2021 from 1 pm to 4 pm, including his review of Vellani's updated report produced at 10 am the morning of the deposition. Mr. Brown conducted research for potential forensic neutrals to be used in resolving the dispute between the parties. We both reviewed and revised the Joint Notice of Compliance. Mr. Brown reviewed documents produced in the *Mayes v. Contour Eastwyck, LLC*, in the State Court of Gwinnett County Georgia, File No. 20-C004895-S2 (the "Mayes Case"), which were neither disclosed in nor produced in the instant mater. Mr. Brown and I attempted to contact the newly identified witnesses as disclosed in the Mayes Case, and if possible, obtained affidavits from the witnesses. Mr. Brown

researched and drafted the First Motion for Sanctions.  I also participated heavily in the drafting of the First Motion for Sanctions.  Mr. Brown and I worked together to prepare for the oral argument on the Motion to Compel Forensic Examination, and we both attended the hearing where I made argument on behalf of plaintiffs.  Mr. Brown reviewed the Rule 30(b)(6) deposition from the Mayes Case and compared it to the transcript of the corporate representative depositions in the instant case, creating a chart to organize the analysis.  We both reviewed and analyzed the Order on the Motion to Compel the Forensic Examination.   Mr. Brown researched and prepared subpoenas to Cygnus Systems, Contour OTV, and Contour 5151 ONH regarding Keith Thurman and related ESI.  We both read and analyzed defendant's Second Supplemental Responses to the First Interrogatories, analyzing continued deficiencies, and had correspondence with defense counsel Perniciaro regarding the same.  We both reviewed and analyzed the defendant's Response to the First Motion for Sanctions, and Mr. Brown researched and drafted the Reply.   We both contributed to the drafting of the Eighth Request for Production of Documents to defendant, required by defendant's continuing discovery deficiencies.  The total time spent by Mr. Brown on these tasks during the month of August 2021 is 101.4 hours. The total time I spent on these tasks is 37.5 hours.

37.     During September 2021, I corresponded with defense counsel Perniciaro regarding his desire to seek "clarification" of the Judge's Order.  I had multiple substantive correspondence with defense counsel Perniciaro regarding Contour's email and ESI search and questions in regards to the same, as well as defendant's privilege log.  After receiving the defendant's ESI search results from defense counsel Perniciaro, Mr. Brown and I both spent time analyzing the results, formulating narrowed ESI search terms, and communicating with defense counsel Perniciaro regarding the revised terms.  Mr. Brown reviewed and analyzed payroll records for Keith Thurman, deposition exhibits regarding defendant's company policies produced in the Mayes Case, and defendant's Response to the Eighth Request for Production of Documents.  Mr. Brown also had correspondence with defense counsel Perniciaro regarding ESI search terms and W2s.  The total time I spent on these tasks during the month of September 2021 is 5.8 hours.  The total time Mr. Brown spent on these tasks is 10.3 hours.

38.     During the month of October 2021, Mr. Brown and I both had multiple, substantive discussions with defense counsel regarding continuing discovery deficiencies, including as to company W2 forms and other documents form the company's accountants related to employees and revisions to the ESI search terms and defendant's challenges to the resulting number of responsive documents.  Mr.

20

Brown reviewed and analyzed the documents produced in response to the Eighth Request for Production of Documents and certain documents responsive to the ESI search. Mr. Brown read and reviewed deposition transcripts from the Mayes Case, including those of David Dedvukaj, Marshal Rhodes, and Latasha Dia. Mr. Brown also reviewed the bodycam footage, locating a blue Pontiac Firebird and conducted research to locate the owner. Mr. Brown also conducted research on a potentially undisclosed witness, Charles Cooper, whose brother owned the blue Pontiac Firebird. Mr. Brown drafted the Ninth Request for Production of Documents, necessitated by defendant continuing to withhold evidence. Both of us reviewed and analyzed the Court's ESI Order and what it meant for continuing discovery. The total time spent by Mr. Brown on these tasks is 31.5 hours. The total time I spent on these tasks is 8.8 hours.

39. In November 2021, Mr. Brown and I both had multiple, substantial communications, by email and telephonically, to meet and confer with defense counsel regarding multiple topics, including: defense counsel Perniciaro's email regarding Contour withholding 7,000 emails; defendant's contention that it was allowed to withhold ESI search results as non-responsive; defendant's request for a confidentiality order and whether defendant has taken appropriate steps to maintain its information in confidence; the proposed protective order; ESI search terms and

results and interpretation; Draper's rate sheet and an interview of Draper; undisclosed witness Charles Cooper; and plaintiffs' contention defendant waived privilege. Additionally, Mr. Brown prepared and filed Plaintiff's Status Update to the Court (D.I. 177) and reviewed Defendant's Response to Status Update (D.I. 179). Mr. Brown prepared plaintiffs' responses to defendant's Second Requests for Admission. Mr. Brown also conducted legal research regarding waiver of privilege related to an undisclosed witness. The total time Mr. Brown spent on these matters is 14.4 hours. The total time I spent on these matters is 6.1 hours.

40.    During December 2021, Mr. Brown had multiple communications with defense counsel Perniciaro regarding topics, including: waiver of privilege for failure to disclose witness; confidentiality of defendant's documents; witness Charles Cooper; and the discovery timeline. Mr. Brown researched other protective orders entered by the Court and edited the proposed protective order in conformity with past examples. Mr. Brown reviewed defendant's discovery responses, conducted legal research, and drafted the Second Motion for Sanctions. I also assisted in and provided substantial edits and additions to the Second Motion for Sanctions. After the Second Motion for Sanctions was Filed, we both had multiple correspondence, email and telephonic, with defense counsel Perniciaro and Moffett. During these communications, defense counsel Moffett asked us to withdraw our

sanctions motions, and when we declined, he told us that we were unprofessional and should withdraw the motion, and that better lawyers would not have needed to file the motion. We both reviewed the Draper report and performed analysis to generate questions to Draper. I had discussions and negotiations with defense counsel Perniciaro regarding the requested Joint Status Report, edited the report, and filed it. The total time Mr. Brown spent on these tasks is 63.1 hours, of which, 52 hours were spent researching the law and facts supporting our motion and drafting the Second Motion for Sanctions. The total time I spent on these tasks is 21.1 hours, of which 14.5 hours were spent drafting the Second Motion for Sanctions and in discussions with defense counsel afterward.

41.    During January 2022, Mr. Brown and I had multiple substantive communications with defense counsel Perniciaro regarding a range of discovery topics, including: witness Charles Cooper; plaintiffs' ability to speak with Draper; documents related to Draper interview; 10 ESI search terms not completed; and problems with defendant's privilege log. Mr. Brown and I both reviewed the Defendant's Response to Second Motion for Sanctions. Mr. Brown did the majority of the legal research and drafting of the Reply (D.I. 200), but I also assisted in the drafting of the Reply brief, including making substantive additions. I also prepared for and conducted the interview of forensic examiner Draper, analyzed how to

modify our plan for depositions and focus them based on defendant's discovery and inadequate responses. The total time Mr. Brown spent on these tasks was 31.9 hours, of which 29 hours were spent on the Reply briefing alone. The total time I spent on these tasks was 11.1 hours, of which 4.5 hours were spent on preparation of the Reply brief.

42.    During February 2022, prepared for and attended the two day hearing on the Second Motion for Sanctions occurring on February 8 and 9, 2022. Mr. Brown spent 22 hours preparing for the hearing and 9 hours attending the hearing, for a total of 31 hours. I spent 26 hours preparing for the hearing, and 9 hours attending and arguing at the hearing, for a total of 35 hours.

43.    During April 2022, I corresponded with the Court's court reporter regarding payment for the hearing transcript to ensure the transcript was prepared. I also reviewed the Motion to Compel Dedvukaj deposition and located emails on the subject. I spent a combined 1.1 hours during the month of April 2022 on these tasks.

44.    On May 24, 2022, I had further communications with the Court's court reporter regarding the transcript from the two-day hearing and learned that defendant had not yet paid its portion of the costs. This correspondence took 0.1 hours.

45.    Over the course of the case, Mr. Brown and I both spent considerable time reviewing and analyzing defendant's email production, including by reviewing

the tens of thousands documents and dividing them into categories- "hot" that seemed important and "cold documents that did not. Mr. Brown reviewed all the documents. I reviewed all of the "hot" documents a sample of the "cold" documents as categorized by Mr. Brown. We also compared the "hot" emails to other evidence produced in the case and discovery responses. We would conduct our own analysis and meet to strategize as to continuing deficiencies and how to pursue discovery. We conservatively estimate that I spent 60 hours conducting such review and analysis and that Mr. Brown spent 90 hours conducting such review and analysis.[2]

46.    Over the course of the case, and relevant to the instant matter, Firm paralegal Kacie Butcher performed an estimated 100 hours of work supporting Mr. Brown and myself in the above-described actions. Her work included drafting and filing certificates of service related to discovery responses, motions, and other filings. She assisted in the preparation of and oversaw service of subpoenas to third parties. Ms. Butcher assisted us in finalizing and filing motions, briefs, and other filings with the Court. Ms. Butcher would upload and organize documents received from defendant and written discovery responses, as well as scan for important information. Ms. Butcher provided assistance in preparing for depositions,

---

[2] In the Joint Status Update and Proposed Discovery Plan [Dkt. 191], defense attorney Perniciaro stated that as of December 31, 2021, he had spent 70.3 hours solely reviewing Contour emails.

including organizing and preparing documents identified for use as exhibits, and preparing for oral argument at hearings. Ms. Butcher also assisted in locating information about witnesses defendant failed to disclose. This is a conservative estimate of her time spent supporting the work of the lawyers on this case.

47. Attached hereto as Exhibit 3 is a chart summarizing the time spent by each biller, broken down by month, and applying a billable hour rate to determine a calculation of the value of the time spent on matters caused by, rendered useless by, impacted by, or necessitated by defendant's misdeeds. For preparation of this chart, I used the rates as set forth in plaintiffs' fee agreement for hours charged for termination as set forth above in Paragraph 17.

48. Attached hereto is Exhibit 4 which is also a chart summarizing the time spent by each biller, broken down by month, and applying a billable hour rate to determine a calculation of the value of the time spent on matters caused by, rendered useless by, impacted by, or necessitated by defendant's misdeeds. For preparation of this chart, I used the rates as agreed to with clients in the respective years as set forth above in Paragraph 20. Accordingly, I utilized $450 an hour for my time in 2020, but $600 an hour in 2021 and 2022. I utilized $300 an hour for other attorney time in 2020, but $500 an hour in 2021 and 2022. Finally, I used $100 an hour for

paralegal time, if any, in 2020, but $150 in 2021 and 2022.  I believe this calculation more accurately reflects the value of the work performed.

49.    As set forth in Exhibits 3 and 4, the range of the value of fees for time spent by each biller, broken down by month, and applying a billable hour rate to determine a calculation of the value of the time spent on matters caused by, rendered useless by, impacted by, or necessitated by defendant's misdeeds, and not any other aspect of the case, is between $294,945.00 and $448,000.00.  I believe this is a fair and reasonable albeit conservative estimate of the value of the work performed as set forth and described more fully above.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this ____13th____ day of February, 2023 in Atlanta, Georgia.


_____
                                    Michael Rafi