# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| MILDRED COLLINS-WILLIAMS as administrator of the estate of TIJUANA FRAZIER and as guardian and next friend of Quanisha Holt, a minor, and Pebbles McClain as guardian and next friend of Julian Frazier and Isaiah Frazier, minor. | ) ) ) ) ) ) ) ) | **CASE NO: 1:20-CV-03129-CAP** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CONTOUR EASTWYCK, LLC, | ) ) | |
| Defendant. | ) / | **Conference is requested** |

## AMENDED PRETRIAL ORDER

The parties hereby submit this Amended Pretrial Order submission, prior to the Court's entry of the Pretrial Order submitted by the parties on April 5, 2023 (Docket Entry 268) to address some errors in the original submission and to update it to reflect recent developments.  Specifically, the parties have made revisions to Paragraphs 1, 2, 8, 11, 17, and 28 and Attachments "D," "G-2," and "H-2."

1.

There are no motions or other matters pending for consideration by the court expect as noted:

**By Plaintiffs:**

- Plaintiffs' Petition for Attorney's Fees

- Plaintiff's Motion to Substitute Quanisha Holt, individually, for Mildred Collins-Williams, as guardian and next friend of Quanisha Holt, a minor, filed April 25, 2023, which will change the style of the case if granted.

**By Defendant:**

- Defendant's Omnibus Motions *in Limine* (DE 266);

- Plaintiffs' Petition for Attorney's Fees;

- Defendant's Motion to Trifurcate (DE 267); and

- Defendant's Motion for Partial Summary Judgment (as to punitive damages – DE 263).

- Defendant respectfully submits that there may also be an issue as to the guardianship of Quanisha Holt.  She has recently turned 18 years of age, so she would ordinarily be substituted as a party plaintiff, but there are questions as to her competency to be a party-plaintiff.  Defendant

requests that this issue be addressed by the Court at the Pre-Trial Conference as needed.

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**By Plaintiffs: All discovery has been completed. Plaintiff does not anticipate needing any depositions for the preservation of evidence except for the potential preservation depositions of Sgt. Van Hees, Det. Collins, Det. Darius Ward, and Jacqueline Wright, identified below.**

**By Defendant: All discovery has been completed.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The parties are properly named.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**There is no question as to the jurisdiction of the court. Jurisdiction for all claims is based upon diversity of citizenship under United States Code Title 28, section 1332. This case was properly removed pursuant to 28 U.S.C. § 1441 from the State Court of Dekalb County.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

<u>**Plaintiffs:**</u>

Michael T. Rafi
Rafi Law Firm LLC
Ga. Bar. No. 127670
1776 Peachtree Street NW
Suite 423-S
Atlanta, GA 30309
(404) 800-9933
mike@rafilawfirm.com

**Defendant:**

Frederick N. Sager, Jr.
Ga. Bar No. 622070
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
3344 Peachtree Road NE
Suite 2400
Atlanta, Georgia 30326
Telephone: (404) 876-2700
rsager@wwhgd.com

6.

Normally, the plaintiff is entitled to open and close arguments to the jury.
(Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should
not be permitted to open arguments to the jury.

N/A.

7.

The captioned case shall be tried to a jury.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that
the same jury consider separately issues such as liability and damages. State briefly
the reasons why trial should or should not be bifurcated.

**The parties have consented to trifurcating the trial into phases for
compensatory damages, entitlement to punitive damages, and amount of
punitive damages, if any.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

**By Plaintiffs: See Attachment A-1**

**By Defendant: See Attachment A-2**

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

The court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to Plaintiffs' voir dire questions:

**Defendant objects to Plaintiffs' general voir dire questions numbers five through 10 as they are argumentative and seek to condition the jury to render an excessive verdict.  Please see Defendant's Omnibus Motion *in Limine*, which is incorporated herein by reference.**

**Defendant objects to Plaintiffs' general voir dire questions numbers 16 through 24, 26, 27, 40, and 43 as they are argumentative and inappropriate.**

**Defendant objects to Plaintiffs' general voir dire question number 35 as it improperly seeks to taint the jury with insurance information.**

State any objections to Defendant's voir dire questions:

**Plaintiffs' object to Defendant's question #11, as it implies that the Defendant may not have done something wrong and that the jurors will be asked to determine whether the Defendant did anything wrong, when the issue of Defendant's liability has already been determined as a result of the sanctions order.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**Defendant's excess liability insurer, Nautilus Insurance Company, has filed a declaratory judgment action seeking a declaration that there is no coverage for the claims asserted by Plaintiffs in this matter. That matter, filed in the Northern District of Georgia, is styled: Nautilus Insurance Company v. Contour Eastwyck, LLC; Mildred Collins, as Administrator of the Estate of Tijuana Frazier and as Guardian and Next Friend of Q.H., a minor, and Pebbles McClain, as Guardian and Next Friend of J.F. and L.F., Minors; Civil Action File No. 1:23-cv-00616-CAP.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for

each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

**By Plaintiff:**

1. **The value of Kisha Frazier's life that was lost;**

2. **The amount of damages to be paid for Kisha Frazier's funeral and burial costs, as well as conscious pain and suffering;**

**3. Whether punitive damages should be assessed against Contour Eastwyck, and if so, how much is necessary to punish, deter, and penalize Contour Eastwyck.**

**By Defendant: Compensatory damages and (pending the outcome of Defendant's Motion for Partial Summary Judgment [DE 263]) whether Plaintiffs are entitled to punitive damages, and, if so, the amount of punitive damages.**

18.

Attached hereto as Attachment "F-1" for Plaintiffs and Attachment "F-2" for Defendant is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior

to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for Plaintiffs and Attachment "G-2" for Defendant are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there

12

are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**Plaintiff's Deposition Designations:**

| Bennett Omalu, MD taken on July 12, 2021 | | | |
|---|---|---|---|
| Beginning Page: Line | Ending Page: Line | | Defendant's Counter Designations |
| 4:6 | 4:9 | | |
| 17:22 | 20:18 | | |
| 35:15 | 44:11 | | |

**Defendant's Objection to Designations:**

Defendant objects to Plaintiffs' announced intention to introduce portions of the deposition of Bennet Omalu, M.D., who was previously disclosed as a defense expert, as the requisites for admitting his testimony via deposition have not been met.  Defendant reserves the right to make further objections to this testimony prior to trial as provided for in the instructions.

In the event Dr. Omalu's deposition testimony is allowed to be read to the jury, Defendant reserves the right to provide counter designations to also be read to the jury.  Further, as noted in Defendant's Omnibus Motion *In Limine* (DE 266), any testimony of Dr. Omalu must not include any reference to his being previously retained by the defense.

**Defendant's Deposition Designations**

Defendant notes that some of the below designations may be withdrawn or altered depending on the Court's rulings on anticipated motions *in limine* and objections to Plaintiff's designations and counter-designations.

| Mildred Collins-Williams taken on January 20, 2021 | | | |
|---|---|---|---|
| Beginning Page: Line | Ending Page: Line | | Plaintiffs' Counter Designations |
| 28: 6 | 29: 13 | | |
| 34: 25 | 35: 8 | | |
| 79: 6 | 79: 21 | | |
| 80: 17 | 81: 10 | | |
| 84: 17 | 89: 13 | | |
| 93: 4 | 94: 17 | | |
| 95: 9 | 95: 14 | | |
| 98: 11 | 98: 14 | | |

| Pebbles McClain taken on January 20, 2021 | | | |
|---|---|---|---|
| Beginning Page: Line | Ending Page: Line | | Plaintiffs' Counter Designations |
| 27: 1 | 27: 25 | | |
| 40: 15 | 40: 22 | | |
| 41: 22 | 43: 7 | | |
| 79: 14 | 79: 25 | | |

Any objections to the deposition of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial.  Objections not perfected in this manner will be deemed waived or abandoned.  All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel,

shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachment "H-2" for Defendant are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge were submitted by the parties on **April 18, 2023**. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are

directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person with Judge Baverman on March 29, 2023, to discuss in good faith the possibility of settlement of this case. That settlement conference concluded with an impasse. The court (____) has or (____) has not discussed settlement of this case with counsel. It appears at this time that there is:

> (_____) A good possibility of settlement.
> (_____) Some possibility of settlement.
> (XXX) Little possibility of settlement.
> (_____) No possibility of settlement.

27.

The trial of this matter is specially set for May 2, 2023.

28.

The Plaintiffs estimate that it will require **3** days to present their evidence for Phase 1 (compensatory damages and entitlement to punitive damages) of the trial. The Plaintiffs estimate that it will require **1** day (amount of punitive damages) to present their evidence for Phase 2 of the trial.

As noted above, the parties have consented to the trial being trifurcated. If the Court approves trifurcation, Defendant estimates that Phase 1, which will be limited to compensatory damages, would take 2 days. If Defendant's Motion for

Partial Summary Judgment (DE 263) is granted, there would be no other phase of trial.  If the Motion for Partial Summary Judgment is denied, Defendant estimates Phase 2 would take 2 days, and Phase 3 would take one-half day.  As such, Defendant estimates that the total trial time is 2 to 4.5 days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (        ) submitted by stipulation of the parties or (X) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this 1st day of February, 2024.

/s/ Steve C. Jones
_____
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to the entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

RAFI LAW FIRM LLC

*/s/  Michael T. Rafi*
Michael T. Rafi
Georgia Bar No. 127670
mike@rafilawfirm.com
Alexander J. Brown
Georgia Bar No. 532112
brown@rafilawfirm.com
1776 Peachtree Street NW
Suite 423-South
Atlanta, GA 30309
Ph:  404.800-9933
Fax: 470.344.3425

*Attorneys for Plaintiffs*

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

*/s/ Frederick N. Sager, Jr.*
Frederick N. Sager, Jr.
Georgia Bar No. 622070
rsager@wwhgd.com
John M. Hawkins
Georgia Bar No. 338698
jhawkins@wwhgd.com
3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
Ph:  404.876.2700
Fax: 404.875.9433

*Attorneys for Defendant Contour
Eastwyck, LLC*

**<u>Attachment "A-1"</u>**

**<u>PLAINTIFFS' PROPOSED VOIR DIRE REGARDING LEGAL</u>**
**<u>QUALIFICATIONS TO SERVE</u>**

1. Are you a citizen of the United States?

2. Are you over 18 years of age?

3. Do you have trouble reading, writing, speaking, or understanding the English language?

4. Over the last year, has anyone primarily lived in a county other than: Cherokee, Clayton, Cobb, Dekalb, Fulton, Gwinnett, Henry, Newton, or Rockdale?

5. Do you suffer from a mental or physical infirmity that would prevent you from serving on the jury?

6. Do you currently have a criminal charge either in State or Federal court pending against you that is punishable by imprisonment for more than one year?

7. Have you ever been convicted of a crime either in State or Federal court that is punishable by imprisonment for more than one year?

8. This case relates to the death of Tijuana LaKisha Frazier, who went by Kisha. Did any member of the panel know or ever meet Kisha Frazier?

9. Does anyone know Kisha's mother, Mildred, or her children, Quanisha Holt, Julian Frazier, or Isaiah Frazier?

10. The Defendant is Contour Eastwyck, LLC, which is a company that owned and operated Eastwyck Village Apartment sin Decatur, Georgia. Has anyone ever heard of Contour Eastwyck, LLC or Eastwyck Village Apartments?

11. Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by Weinberg, Wheeler, Hudgins, Gunn & Dial?

12.Do you know anyone in the courtroom today?

<u>**Attachment "A-2"**</u>

**<u>DEFENDANT'S PROPOSED VOIR DIRE REGARDING LEGAL
QUALIFICATIONS TO SERVE</u>**

1.   Does any member of the panel know Mike Rafi or Alex Brown?

2.   Does any member of the panel know any employees of, or has any
     member of the panel or their immediate family worked for or been
     represented by The Rafi Law Firm?

3.   Does any member of the panel know Frederick "Rick" Sager or John
     "Jack" Hawkins?

4.   Does any member of the panel know any employees of, or has any
     member of the panel or their immediate family worked for or been
     represented by Weinberg, Wheeler, Hudgins, Gunn & Dial?

5.   This case relates to the death of Tijuana Frazier, also known as Kisha
     Frazier.  Did any member of the panel know or ever meet Tijuana or
     Kisha Frazier?

6.   The following are the Plaintiffs in this case.  Does anyone know or has
     anyone ever met any of them:

     a.  Mildred Collins-Williams;
     b.  Pebbles McClain;
     c.  Quanisha Holt;
     d.  Julian Frazier; or
     e.  Isaiah Frazier.

7.   The Defendant is Contour Eastwyck, LLC.  Has anyone ever heard of
     Contour Eastwyck, LLC?

8.   Does anyone know any of the following individuals who may be
     witnesses in this case:
     a.  Tijuana Frazier also known as Kisha Frazier
     b.  Mildred Collins-Williams

    c.  Quanisha Holt
    d.  Pebbles McClain
    e.  Isaiah Frazier
    f.  Julian Frazier
    g.  Pamela Cosby
    h.  Andrea Cosby
    i.  Ray Kendrick
    j.  Clarence Frazier
    k.  Dante Charles
    l.  Nora Prekelezaj
    m. Pete Dedvukaj
    n.  Latasha Dia
    o.  Keith Thurman
    p.  Danna Harris
    q.  Shaneka Benton
    r.  Antoinette Narcisse
    s.  Wendal Johnson
    t.  Jacqueline Wright
    u.  Dr. Eric Smith
    v.  Dr. Geoffrey Smith
    w. Eric Minter
    x.  Michael Hodge
    y.  Paul Kastes

9.  Is there any member of the panel who has any special disability or problem that would make serving as a member of this jury difficult or impossible?

10. Does any juror hold any belief, religious or otherwise, which discourages or prevents jury service?

11. Is there anyone who is not a citizen of the United States?

12. Is there anyone here who is not at least eighteen years of age?

13. Do you speak English?

14. Can you read, write and understand English?

15.    Is there anyone here that has a charge pending against him or her for the commission of, or has been convicted in a State or Federal court of a crime punishable by imprisonment for more than one year?

16.    For anyone who answered "Yes" to the previous question, have you since sought and obtained civil rights relief concerning your criminal charges or conviction?

## Attachment "B-1"

## PLAINTIFF'S GENERAL VOIR DIRE QUESTIONS

1. This is a wrongful death case. At the end of the case, you'll be instructed on the law, and be asked to award money damages for the full value of Kisha Frazier's life. Does anyone here feel that they would have difficulty awarding damages for the value of someone's life?

2. Does anyone here feel that they would be incapable of awarding money damages for the value of someone's life?

3. Does anyone here have a moral, religious, or philosophical issue with awarding money damages for the value of someone's life?

4. Some people feel that because the money won't bring the person back, that money damages shouldn't be awarded, regardless of what the law says. Anyone here feel that way?

5. Some people feel that when evaluating the value of someone's life, you should pay most attention to what they were like at the time of their death. Other people feel that you should look at their life as a whole. Which way would you lean towards? Why?

6. Does anyone believe that they would not be able to award more than $10 million for the value of a life, even if the evidence showed the life was worth $10 million.

7. Who knows someone who has made more than $1 million a year?

8. Who has seen a house worth more than $1 million?

9. Who here believes that human life is more important than anything you can own?

10. Who here believes that human life is the most valuable thing we have?

We are going to ask some questions that are personal. Please know we are just doing our job. These questions are important so everyone involved will be

confident we have a fair and impartial jury, and one that is a good fit for this particular case.

When I say "inner circle," I mean yourself, your family, and your close friend.

Does anyone have someone in their inner circle who struggled with:

- a. Depression?
- b. Post-Partum Depression?
- c. Bipolar disorder?
- d. Schizophrenia?

11. Has anyone here had a member of their inner circle who expressed suicidal feelings?

12. Has anyone here had a member of their inner circle struggle with addiction?

13. Has anyone here had a member of their inner circle struggle with substance abuse?

14. Has anyone here had a member of their inner circle be molested or sexually assaulted?

15. Does anyone think that someone who has mental health challenges is a burden on their family?

16. Does anyone think that someone who has mental health challenges or substance abuse issues isn't as valuable to society as a person who doesn't?

17. Who here believes in giving second chances?

18. Who here knows someone who has gotten a second chance at life – this could be because of medical treatment, a change in life circumstances, or some other way?

19. Who here knew someone who did not get a second chance, but you wish they did?

20. Who here believes that people are naturally good?

21. Who here considers themselves to be religious, or believes in a higher power?

22. Does anyone here fear or worry about death?

23. Does anyone worry about what would happen to their loved ones if they passed away?

24. Does anyone know someone who has done something shameful for money?

25. Anyone who know someone who was a sex worker?

26. Who here thinks that being a sex worker is disgusting, shameful, a sin, or wrong?

27. Does anyone think that someone who was a sex worker is less of a human than someone who wasn't?

28. Who here knows someone that has been arrested for a crime?

29. Who here knows someone who has been arrested and convicted of a crime?

30. Who here knows someone who has served jail time?

31. Has anyone worked in a job where you helped or treated people with mental health challenges or substance abuse issues?

32. Anyone have medical training?

33. Law enforcement training?

34. Legal training?

35. Work in the Insurance industry at any time?

36. Any Educators, teachers, or professors?

37. Work in apartment complexes, multi-family housing, or property management?

38. Any business owners?

39. Who has had a member of their inner circle live in what you'd consider a "bad neighborhood"

40. Does anyone believe if you're in a bad neighborhood it's your fault if something bad happens to you?

41. Who knows someone who has been homeless for any period of time?

42. Was anyone here adopted or raised by someone other than your biological parents?

43. Anyone here have negative feelings towards mothers who allow their children to live or be raised by someone else?

44. Some people feel like there are too many lawsuits or that people are too quick to sue, does anyone here feel that way?

45. Some people feel that there are too many lawyers on billboards or on TV, does anyone here feel that way?

46. Does anyone have any negative feelings about Plaintiffs in lawsuits, or personal injury lawyers, whether its based on personal experience or anything else?

47. Has anyone here ever been the Defendant in a civil suit?

**Attachment "B-2"**

Defendant respectfully requests that its counsel be allowed to propound or that the Court propound the following general questions to the jurors on voir dire examination:

This is a case arising out of the shooting death of Tijuana Frazier by a stray bullet on April 6, 2019 at Eastwyck Village Apartments in Decatur, Georgia.

1. How many of you have concerns about your ability to serve on a case like this one because it just hits too close to home?

2. Hearing about the tragic injuries caused by gun violence and the impact it has had on Ms. Frazier and her family, is a sensitive topic, especially if you have had a recent loss or serious injury yourself or in your family or among close friends. Is there anyone who feels that a recent loss or tragedy that you have experienced is too strong for you to be a juror and hear evidence about the plaintiff's injury and suffering?

3. The subject apartment complex, Eastwyck Village, is in a dangerous neighborhood with a history of crime. Without hearing any evidence, how many of you believe that Defendant Contour Eastwyck should compensate Ms. Frazier's family everything they are asking the jury to award in this case?

4. Because she died through no fault of her own, how many feel like the plaintiffs should be paid a lot of money to compensate them for their loss?

5. How many of you already believe that Defendant Contour Eastwyck deserves to be punished? Believe that in addition to money to compensate for the death of Ms. Frazier, there should also be additional money awarded by the jury to send a message to Contour Eastwyck?

6. How many of you have personally or had someone close who has been the victim of a shooting or other violent crime?

7. How many of you have personally or had someone close to you who has been shot at, threatened with a gun or has some other bad experience where a gun was involved?

8. How many of you have ever felt victimized by any circumstance, person or event that was out of your control?

9. How many of you have been involved in providing care to a family member or family member's children because they could not care for themselves and/or their children?

10. How many of you have personally or had someone close who suffered from addiction?

11. How many of you feel that your heart inclines you to take care of the injured— Ms. Frazier's family – more than worry about fault or whether the defendant did anything wrong?

12. For some of you, given your background, your personal or work experiences, or even your personality, you may have an emotional reaction to this case – a case that stems from a gun violence. That is natural and reasonable when dealing with a case with these kinds of claims. What matters here is how those feelings will affect you. Based on what you know about this case, who here has concerns about your ability to set sympathy for Ms. Frazier's family aside?

13. By raise of hands, how many of you already start out with a bias or distaste for landlords of housing properties like Eastwyck Village Apartments?

14. How many of you know of, visited or seen Eastwyck Village Apartments? Or visited the area of the apartments, off of Candler Road in Decatur, just inside the Perimeter and just north of I-20?

15. How many of you have had a negative experience with or concerns for personal safety at an apartment complex where you lived or were visiting friends?

16. How many of you feel that landlords do not do enough to ensure the safety of their tenants?

17. How many of you feel strongly that landlords should take every conceivable precaution, no matter how costly those precautions may be, to prevent crimes against their tenants?

18. Who here agrees and or expects that security guards at apartment complexes or other residential properties should prevent violent crime? Who here feels strongly about this?

19. How many of you have negative feelings or opinions about corporations in general?

20. How many of you have been morally disgusted with a corporation?

21. Who here has any special knowledge, training or work experience in any of the following:

    a. Medicine or Healthcare?

    b. Mental Health – including psychiatry, psychology, counseling or social work?

    c. Emergency Medical Treatment or Crisis Training?

    d. Trauma Response or Care?

    e. Safety practices, regulations, or compliance?

    f. Security?

    g. Addiction?

22. Who here has followed news or social media, supported, or had any involvement with the March for Your Lives or other groups or movements that support gun reform or restrictions?

23. How many of you feel that people who are wrongfully injured are sometimes not fairly compensated in court?

24. How many of you agree strongly that there is no amount of money that can truly compensate someone who has suffered the death of a child or parent?

25. In a case about damages to compensate a family for its loss, how many of you would find it distasteful or offensive for the defendant to offer evidence about the decedent's character, drug use, and any other illegal activities?

26. If you are seated as a juror, you can make sure that your other jurors also set sympathy aside in their decision making? Thank you very much.

27. Plaintiffs have to prove the damages claims they are making in this case. Will anyone have any trouble holding the plaintiffs to their burden to prove every dollar of damages that are fair and reasonable for Contour Eastwyck to pay under the circumstances of this case?

28. (If applicable) Finally, as you heard from the court, there is a punitive damage claim in this case. The plaintiffs allege that Contour Eastwyck showed conscious indifference to Ms. Frazier and should be punished. Plaintiffs have a higher burden to prove punitive damages should be awarded – it must be by clear and convincing evidence. Can everyone agree to hold plaintiffs to their burden to prove punitive damages are warranted by clear and convincing evidence?

## Attachment "C"

## PLAINTIFFS' OUTLINE OF THE CASE

This case is about whether all human life is valuable. Kisha Frazier was killed at Eastwyck Villages Apartments while she was asleep inside an apartment. Contour Eastwyck, owned and operated Eastwyck Village, and the Judge has already decided that they are 100% responsible for Kisha's death. The jury must now decide how valuable Kisha's life was and how much to award for Kisha's death.

Kisha was born on April 19, 1981 to her parents, Clarence Frazier and Mildred Collins-Williams. Following high school, she worked in child care and at Grady Hospital as a caregiver. In 2005, Kisha gave birth to her first child, Quanisha Holt.

Following the birth of Quanisha, Kisha began to suffer from post-partum depression and developed other mental health challenges, including schizophrenia, bi-polar disorder, and substance abuse.

On April 6, 2019, Kisha was asleep in a bed at Eastwyck Village Apartments in Decatur. She was there visiting a friend. The two of them used drugs and went to sleep in an upstairs bedroom.

34

While Kisha was asleep, someone fired a gun in the common area of Eastwyck Village. One of the bullets went through the wall of the apartment and struck and killed Kisha. Police determined that Kisha was an innocent victim and not targeted in any way.

The Judge has ruled that Contour Eastwyck is 100% responsible for Kisha's death. Kisha was 37 years old when she was killed. She is survived by her 3 children: Quanisha Holt, Julian Frazier, and Isaiah Frazier. The jury must decide whether all human life is valuable, and specifically, how valuable Kisha's life was.

**By Defendant:** Defendant objects to Plaintiffs' Outline of the Case as it is argumentative and recites evidence, both of which are specifically prohibited by the Court.  Defendant also objects to Plaintiffs' repeated characterization that Defendant is "100% responsible" and the jury must decide "how valuable" her life was as those statements are argumentative and could mislead the jury.  Defendant respectfully submits that Plaintiffs' Outline of the Case should be revised accordingly before it is read to the jury.  Defendant also notes that it has a pending Motion for Partial Summary Judgment as to the issue of punitive damages.

**<u>Relevant Rules, Regulations, Statutes, Ordinance, and Illustrative Case Law
Creating a Specific Legal Duty Relied Upon by Plaintiff</u>**

*<u>Negligence</u>*

Due to the striking of Defendant's Answer, Plaintiff does not believe it necessary

to fully list the relevant rules, regulations, statutes, ordinances, and illustrative case

law related to negligence, but does so in an abundance of caution.

<u>O.C.G.A. § 51-3-1</u>;

    "[T]he essential elements of a cause of action for negligence are: (1) a legal

duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between

the breach and the injury." *Tuggle v. Helms*, <u>231 GA App. 899</u> (1998).

    Under Georgia law, "a landowner is liable to invitees for injuries caused by

his failure to use ordinary care in keeping the premises safe." <u>O.C.G.A. § 51-3-1</u>;

*Hickman v. Allen*, <u>217 Ga. App. 701, 702</u> (1995). "[I]n Georgia, a proprietor has a

statutory duty to exercise ordinary care to keep its premises safe, which includes

inspecting the premises to discover possible dangerous conditions of which the

proprietor does not have actual knowledge, and taking reasonable precautions to

protect invitees from dangers foreseeable from the arrangement or use of the

premises." *Benefield v. Tominich*, <u>308 Ga. App. 605, 607-608</u> (2011) (punctuation

and footnotes omitted). "A landowner can be liable for third-party criminal attacks

if the landowner has reasonable grounds to apprehend that such a criminal act would be committed but fails to take steps to guard against injury." *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 462 (2003). Similar prior crimes "should have put an ordinarily prudent person on notice that the [invitees] were facing increased risks." *Matt v. Days Inn of America, Inc.*, 212 Ga. App. 792, 794 (1994).

*Damages*

Plaintiffs seek and are entitled to an award of all estate based and wrongful death damages allowable under Georgia law, as well as punitive damages.

*Damages related to the survival claims:*

Any conscious pain and suffering experienced by Tijuana Frazier prior to her death and all funeral and burial expenses incurred by the Estate.

The undisputed value of the funeral expenses is $3,610.00. O.C.G.A. §§ 9-2-41, 51-4-5(b).

Pre-death fright, shock, terror, and conscious pain and suffering, the value of which shall be determined by a fair and impartial jury. *Monk v. Dial*, 441 S.E.2d 857, 859 (Ga. Ct. App. 1994).

Punitive Damages: Punitive damages in a reasonably sufficient amount to adequately punish and deter future conduct like that of Contour Eastwyck, the

value of which shall be determined by a fair and impartial jury. <u>O.C.G.A. § 51-12-5.1</u>. *Brown & Williamson Tobacco Corp. v. Gault*, <u>627 S.E. 2d 549, 552</u> (Ga. 2006); *Baumann v. Snider,* <u>532 S.E.2d 468, 474</u> (Ga. Ct. App. 2000).

*Damages related to the Wrongful Death claim:*

Pursuant to <u>O.C.G.A. § 51-4-1</u> *et seq.* Plaintiffs seek and are entitled to recover for the full value of Tijuana Frazier's life, the value of which shall be determined by a fair and impartial jury.

For over one hundred years, the civil remedy in Georgia for causing a person to lose their life is not the sum of the foregone paychecks or the services the deceased would have rendered – it is "the full value of the life of the deceased." 1878 Ga. Laws. 59, 59-60; *See also Bibbs v. Toyota Motor Corp.*, <u>815 S.E.2d 850, 853</u> (Ga. 2018). The full value of a decedent's life is measured from the perspective of the decedent, rather than the perspective of the survivors. *Bibbs*, <u>815 S.E.2d at 854-55</u>.

Georgia courts have defined that the full value of a decedent's life has two components: (1) the economic component of the decedent's life, such as "lost potential lifetime earnings, income, or services, reduced to present case value" and (2) the intangible component "whose value cannot be precisely quantified, such as

a parent's 'society, advice, example and counsel' as determined by the enlightened conscience of the [factfinder]." *TGM Ashley Lakes, Inc. v. Jennings*, <u>590 S.E.2d 807, 819</u> (Ga. Ct. App. 2003); *see also Bibbs*, <u>815 S.E.2d at 856</u>.

**Attachment "D"**

**DEFENDANT'S OUTLINE OF THE CASE**

This is a civil case.  In a civil case, one party, called a plaintiff, brings suit against one or more parties called defendants and seeks damages for some alleged wrong.  The Plaintiffs in this case, the mother and children of decedent, Tijuana Lakisha Frazier, are suing Defendant Contour Eastwyck for an incident that occurred at Contour Eastwyck's apartment complex.

On April 6, 2019 a shooting occurred at Eastwyck Village Apartments in Decatur, Georgia which was owned and operated by Contour Eastwyck, LLC. At the time of the shooting, Plaintiff Tijuana Frazier was sleeping in a bedroom in one of the Eastwyck Village apartments.  A bullet came through an exterior wall and penetrated Ms. Frazier's back and came through her chest. While in her body, the bullet passed through Ms. Frazier's left lung and her thoracic aorta, which ruptured. Ms. Frazier died as a result. The shooter remains unidentified.

Ms. Frazier's family has filed this lawsuit alleging her death was caused by Defendant Contour Eastwyck, LLC's failure to keep Eastwyck Village safe for its tenants and their guests. Specifically, Plaintiffs claim that Contour Eastwyck had express notice and knowledge of the dangerous condition of repeated criminal and

dangerous incidents on its property yet failed to act, including the failure to provide adequate security.

Defendant Contour Eastwyck will not be making a defense as to liability. The jury is here to determine the full value of the life of Ms. Frazier. [Subject to the Court's ruling on punitive damages] In addition to compensating Ms. Frazier's family for their loss, Plaintiffs are also seeking punitive damages which are damages to punish Defendant Contour Eastwyck for its alleged reckless disregard for the safety of Eastwyck Village's tenants and visitors.

Defendant reserves the right to revise this outline of the case prior to trial depending upon the Court's rulings on the pending motions.

Law Relied Upon for Defenses

- *See* Motion for Partial Summary Judgment (DE 263) regarding punitive damages (incorporated herein by reference).
- O.C.G.A. § 51-12-5.1
- *See* Trial Brief, attached hereto as Attachment H-2.
- *See* Defendant's Omnibus Motions *in Limine* (DE 266).
- *See* Motion to Trifurcate (DE 267), including, but not limited to:
  - *Moresi v. Evans*, 257 Ga. App. 670, 672 (2002)
  - *Cooper v. Marten Transport, Ltd.,* Case No. 10-CV-3044, 2014 WL 11517830-AT, at *7 (N.D. Ga. May 23, 2014)
  - *Long v. Phillips & Brooks/Gladwin, Inc.,* Case No. 02-CV-1235-CC, 2006 WL 8431255, at *2 (N.D. Ga. Sept. 15, 2006)
- Georgia's Wrongful Death Act, O.C.G.A. § 51-4-1, *et seq*.
- *Webster v. Boyett*, 269 Ga. 191, 192-93 (1998)
- *Fassnacht v. Moler*, 358 Ga. App. 463, 468 (2021)
- *Allstate Insurance Co. v. Vizcay*, 825 F.3d 1326, 1333 (11th Cir. 2016)

- *Ford Motor Co. v. Stubblefield,* <u>171 Ga. App. 331, 340</u> (1984)
- *Donson Nursing Facilities v. Dixon,* <u>176 Ga. App. 700, 701</u> (1985)

**<u>By Plaintiffs:</u>** The statement "Defendant Contour Eastwyck will not be making a defense as to liability" is misleading and insinuates to the jury that Defendant is voluntarily admitting negligence. In truth, Defendant's Answer was struck as a result of misconduct by the Defendant and its former counsel. Plaintiffs submit that the jury should be told that the Court has determined that Contour Eastwyck is 100% responsible for the death of Tijuana Lakisha Frazier.

**Attachment "E"**

Facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

In an effort to help streamline the presentation of evidence at the trial of this matter, the Parties, by and through their undersigned counsel of record, hereby stipulate as follows:

1.

The Parties hereby stipulate and agree that the records produced by the Social Security Administration, Bates labeled SSA 000001 through SSA 000710, are hereby stipulated into evidence and shall be deemed admissible and admitted for any and all purposes at trial.

2.

The Parties hereby stipulate and agree that the medical records produced by Emory Decatur Hospital, Bates labeled Emory Decatur Hospital 00001 through 02352, are hereby stipulated into evidence and shall be deemed admissible and admitted for any and all purposes at trial.

3.

The Parties hereby stipulate and agree that the medical records produced by Central State Hospital, Bates labeled CSH 000001 through CSH 000252, are hereby stipulated into evidence and shall be admissible and admitted for any and all purposes at trial.

4.

The Parties hereby stipulate and agree that the medical records produced by the Dekalb Community Service Board, Bates labeled Winn Way 00001 through 00089, are hereby stipulated into evidence and shall be admissible and admitted for any and all purposes at trial.

5.

The Parties hereby stipulate and agree that the decedent, Tijuana LaKisha Frazier, was diagnosed with the following prior to her death: post-partum depression; substance abuse – cocaine use disorder, severe; substance abuse – alcohol use disorder, severe; paranoid schizophrenia; suicidal thoughts/ideations; bipolar disorder; psychotic delusions; severe chronic depression; attention deficit hyperactivity disorder (ADHD); and post-traumatic stress disorder (PTSD).

6.

[NOT TO BE READ TO THE JURY.] The Parties stipulate and agree that funeral expenses for the decedent, Tijuana LaKisha Frazier, totaled $3,610, and that Defendant is liable for this amount.

### Attachment "F-1"

**Plaintiffs will have present at trial:**

Mildred Collins-Williams (c/o Plaintiffs' counsel)
Pebbles McClain (c/o Plaintiffs' counsel)
Quanisha Holt (c/o Plaintiffs' counsel)

**Plaintiffs may have present at trial:**

Det. Drew Collins
Dekalb County Police Department
1960 West Exchange Place
Tucker, GA 30084

Sgt. Vance Van Hees
Dekalb County Police Department
1960 West Exchange Place
Tucker, GA 30084

Det. Darius Ward
Dekalb County Police Department
1960 West Exchange Place
Tucker, GA 30084

Paul Kastes, CPM, LCAM
15430 Oakcrest Circle
Brooksville, FL 34604

Paul Kastes is a property management expert who will offer testimony under Federal
Rule of Evidence 702 regarding the matters set forth in his report and deposition in
this matter, including: (1) Contour failed to maintain the access gates and fencing in
working order for many years; (2) Contour failed to notify its residents of criminal
activity on and around the Premises; (3) Contour failed to provide a reasonable level
of safety and security for their residents and guests.

Dr. Eric Smith
Forensic Specialists, Ltd.

2850 W. Horizon Ridge Parkway, Suite 200
Henderson, NV 39052

Dr. Smith is a forensic psychologist who will offer testimony under Federal Rule of
Evidence 702 regarding the matters set forth in his report and deposition in this
matter pertaining to the psychological history of Tijuana Frazier and the effects of
trauma.

Tiffany Burston
13 Eastwyck Circle
Decatur, GA 30032

Monique Moseley-Davis
223 Habitat Circle
Decatur, GA 30034

Wendal Johnson
1200 Town Center Dr.
Apt. 1110
McDonough, GA 30253

Latasha Dia
(c/o Defense Counsel)

Pete Dedvukaj
(c/o Defense Counsel)

Nora Dedvukaj
(c/o Defense Counsel)

Keith Thurman
(c/o Defense Counsel)

Contour Eastwyck 30(b)(6)
(c/o Defense Counsel)

Antoinette Narcisse
2621 Church St.

Apt 410
Atlanta, GA 30344

Ray Kendrick, Jr.
2920 Camary Place Drive SE
Conyers, GA 30094

Pamela Cosby
3196 Mount Zion Road
Apartment 1107
Stockbridge, GA 30281

Andrea Cosby
3196 Mount Zion Road
Apartment 1107
Stockbridge, GA 30281

Dante Charles
Arbor House Healing LLC
5930 Highway 85
Riverdale, GA 30274

Jacqueline Wright
2980 Appomattox Way
Decatur, GA 30034

Isaiah Frazier (c/o Plaintiffs' Counsel)

Julian Frazier (c/o Plainitffs' Counsel)

Anyone identified in Defendant's portion of this pre-trial order.

**Attachment "F-2"**

Defendant's Witness List:

Will Call Witnesses:  None.

May Call Witnesses:

- Fact Witnesses:

  o Nora Prekelezaj: 40950 Woodward Ave., Ste. 300, Bloomfield Hills, MI 48304.

  o Pete Dedvukaj: 40950 Woodward Ave., Ste. 300, Bloomfield Hills, MI 48304.

  o Latasha Dia: 40950 Woodward Ave., Ste. 300, Bloomfield Hills, MI 48304.

  o Keith Thurman: Address unknown at this time.

  o Danna Harris: last known address: 4969 Central Drive, Stone Mountain, Georgia.

  o Antoinette Narcisse: last address known: 201 Summit Creek, Stone Mountain, GA 30083.

  o Wendal Johnson.

  o Plaintiff Pebbles McClain.

  o Plaintiff Mildred Collins-Williams.

  o Jacqueline Wright: Plaintiffs' counsel has her contact information.

- Expert Witnesses:

  o Michael Hodge:  Mr. Hodge is a disclosed defense expert who has been deposed by Plaintiffs.  He is expected to testify consistent with his expert report and the testimony he provided in deposition, including, but not limited to, the reasonableness and adequacy of the security measures at Eastwyck Village and the unforeseeability of the incident in suit.

o Karim Vellani: Mr. Vellani is a disclosed defense expert who has been deposed by Plaintiffs.  He is expected to testify consistent with his two reports and the testimony he provided in deposition, including, but not limited to, the fact that Eastwyck Village Apartments had a low risk of stranger volent crime and, as needed, in rebuttal to Mr. Kastes' opinions relating to the deterrence effect of uniformed security and/or police officer patrols on the property and the preventability of the incident in suit. If necessary, he may also testify in rebuttal to Mr. Kastes' testimony on "Broken Windows Theory" being an effective strategy for preventing violent crimes.

o Geoffrey Smith, M.D.:  Dr. Smith is the Medical Examiner who performed the autopsy on Tijuana Frazier. He has been disclosed by Plaintiff as a testifying (though non-retained) expert. He has also been deposed by the parties during discovery.  Defendant anticipates that he will testify, consistent with the testimony he provided in deposition, as to the cause of Tijuana Frazier's death, the injury suffered by Tijuana Frazier, and the fact that Tijuana Frazier did not experience any conscious pain and suffering.

Defendant also reserves the right to call any witness named in Plaintiffs' Witness List.

## Attachment "G-1"

**PLAINTIFFS' EXHIBIT LIST**

|  | Exhibit No. | Exhibit Name/Description |
|---|---|---|
|  | 1 | DKPD Crime Scene Photos |
|  | 2 | Photos of the Decedent and Family |
|  | 3 | Decedent's Funeral and Burial Expenses from Meadows Mortuary |
|  | 4 | Dekalb County Medical Examiner's Report |
|  | 5 | Tijuana Frazier's HS Diploma |
|  | 6 | Messages between Kisha and Pebbles |
|  | 7 | SSA Records |
|  | 8 | Winn Way Records |
|  | 9 | Central State Hospital Records |
|  | 10 | Dekalb Medical Center Records |
|  | 11 | Tijuana Frazier Death Certificate |
|  | 12 | Annuity Mortality Table for 1949, Ultimate |
|  | 13 | Dekalb County Police Reports of Prior Crime |
|  | 14 | Defendant's Security Logs |
|  | 15 | Dekalb County E-911 Calls for Service |
|  | 16 | Eastwyck Day Video |
|  | 17 | Screenshot from Hoodrich Pablo Juan Video |
|  | 18 | Defendant's Responses to Plaintiffs' First Interrogatories |
|  | 19 | Defendant's First Supplemental Responses to Plaintiffs' First Interrogatories |
|  | 20 | Defendant's Second Supplemental Response to Plaintiffs' First Interrogatories |
|  | 21 | Defendant's Third Supplemental Responses to Plaintiffs' First Interrogatories |
|  | 22 | Defendant's Responses to Plaintiffs' First Request for Admissions |

| | 23 | **Defendant's Responses to Plaintiffs' Second Request for Admissions** |
|---|---|---|
| | 24 | **Defendant's Responses to Plaintiffs' Third Request for Admissions** |
| | 25 | **Defendant's Responses to Plaintiffs' Fourth Request for Admissions** |
| | 26 | **Deposition of Nora Prekelezaj from *Collins-Williams*** |
| | 27 | **Deposition of Nora Prekelezaj from *Mayes*** |
| | 28 | **Deposition of Latasha Dia from *Collins-Williams*** |
| | 29 | **Deposition of Latasha Dia from *Mayes*** |
| | 30 | **Deposition of Pete Dedvukaj** |
| | 31 | **Deposition of Keith Thurman** |
| | 32 | **Deposition of Antoinette NarCisse** |
| | 33 | **Deposition of Monique Moseley-Davis** |
| | 34 | **Deposition of Tiffany Burston** |
| | 35 | **Deposition of Wendell Johnson** |
| | 36 | **Deposition of Dr. Geoffrey Smith** |
| | 37 | **Deposition of Dr. Eric Smith** |
| | 38 | **Deposition of Paul Kastes** |
| | 39 | **CV of Paul Kastes** |
| | 40 | **CV of Dr. Eric Smith** |
| | 41 | **Deposition of Bennett Omalu, MD** |

| | | |
|---|---|---|
| | **42** | **Defendant's Responses to Interrogatories in *Mayes*** |
| | **43** | **2019-01-18 Email from Antoinette NarCisee to Latasha Dia** |
| | **44** | **2018-03-22 Email from Bradley Payne to Latasha Dia** |
| | **45** | **2018-02-08 Email from Latasha Dia to Ralph Stretto** |
| | **46** | **2017-10-02 Email from Pete Dedvukaj to Latasha Dia** |
| | **47** | **2018-08-03 Email from Bradley Payne to Latasha Dia** |
| | **48** | **2019-04-08 Email from Dian Pauleon to Latasha Dia** |
| | **49** | **2019-02-28 Email from Jaquita Abrams to Latasha Dia** |
| | **50** | **DKPD Trajectory Rod Photos** |
| | **51** | **2019-04-30 Email from Dian Pauleon to Latasha Dia** |
| | **52** | **Autopsy Photos** |
| | **53** | **Toxicology Results on Samples from Tijuana Frazier** |

**<u>Defendant's Objections to Plaintiffs' Exhibit List</u>:**

Defendant reserves the right to object to any proposed exhibits when and if Plaintiffs attempt to introduce them at trial.

Defendant also objects as follows to Plaintiffs' Exhibit List:

<u>Plaintiffs' Proposed Exhibit 6</u>:  Defendant objects to this exhibit as it is not relevant to the issues to be tried.

<u>Plaintiffs' Proposed Exhibits 13 and 15</u>:  Defendant objects to these exhibits as they are not relevant to the compensatory damages phase and should not be admitted at that time.  The relevancy of these documents is also questionable during the punitive damages phase of the trial.  Further these documents are cumulative and any probative value is outweighed by the prejudicial effect their admission would have on Defendant.

<u>Plaintiffs' Proposed Exhibit 14</u>:  Plaintiffs have not identified which of Defendant's Security Logs they intend to introduce.  As such, Defendant cannot determine which may be relevant, if any, so Defendant interposes an objection to any such logs based on relevancy and hearsay.

<u>Plaintiffs' Proposed Exhibits 16 and 17</u>:  These videos: have not been authenticated and are not properly authenticated; there has been no testimony regarding the circumstances of the recording of these videos and the persons and acts depicted in these videos; and the videos were recorded by an unidentified person on a non-confirmed date under unknown circumstances.  These videos have no relevance to these proceedings.  Defendant further objects to these unauthenticated videos for which there has been no testimony on the grounds that any probative value is clearly outweighed by the prejudicial effect of playing these videos or screenshots to the jury and are, therefore, inadmissible pursuant to FRE 403.

<u>Discovery Responses (Plaintiffs' Proposed Exhibits 18 through 25 and 42)</u>:  Discovery responses of a party are typically not admitted into evidence in toto as proposed by Plaintiffs.   Instead, subject to objections, portions of discovery responses (without objections and irrelevant information) may be admitted into evidence as admissions.  Plaintiffs have failed to designate what portion of the discovery responses they seek to admit into evidence as exhibits.  Defendant objects

as these responses may contain statements which are not relevant to these proceedings or are non-probative of issues involved in the trial, while others may contain prejudicial and otherwise inadmissible information. Additionally, putting these responses before the jury would improperly re-hash discovery issues which have all be definitely resolved in the Court's Sanctions Order (DE 220).

NOTE: Defendant has listed Plaintiffs' Responses to Defendant's three sets of Request for Admissions as Exhibits. Defendant is intending to prepare a document containing only the admissions for provision to the jury. This exhibit would not contain any objections interposed by Plaintiffs nor would it include requests which were denied. Defendant would not object to a similar protocol for any admissions it may have made in response to Plaintiffs' Request for Admissions.

<u>Depositions (Plaintiffs' Proposed Exhibits 26-38, and 41)</u>: LR 43.1 is clear that "No deposition shall be permitted to go out with the jury." This statement is also contained in the body of the Pre-Trial Order at paragraph 20. Defendant objects to any depositions being tendered and introduced as evidence. As the Court is aware, depositions are typically not introduced as exhibits pursuant to <u>Fed.R.Civ.P. 30</u>, <u>32</u>, and 43. Instead, as noted above in the Pre-Trial Order and in LR 43.1, the parties may designate portions of the depositions to be played or read to the jury as if the witness were in the courtroom. Designating portions of depositions for this treatment is the only proper way to obtain evidence from depositions. They cannot be sent out to the jury as full transcripts as they contain: objections; objectionable testimony; attorney statements or arguments; testimony that is hearsay, irrelevant, prejudicial, and/or non-probative; and other inadmissible statements. Further, wholesale tender of all of these depositions would require defense counsel to review each and every deposition and submit objections to any and all objectionable material, which would be unduly burdensome and would exceed the intended and permitted use of depositions at trial.

<u>Documents from Other Cases (Plaintiffs' Proposed Exhibits 27, 29, and 42)</u>: In addition to being improper exhibits as described above, Plaintiffs' Proposed Exhibits 27 and 29 are depositions and Plaintiffs' Proposed Exhibit 42 is a discovery response from another case involving different plaintiffs and a different incident. The entirety of these proposed exhibits are not relevant to this matter.

<u>CVs (Plaintiffs' Proposed Exhibits 39 and 40)</u>: Plaintiffs seek to admit the curriculum vitae of two experts, Dr. Eric Smith and Mr. Paul Kastes. These are not

proper exhibits for submission to the jury as they are hearsay and would constitute a continuing witness.

Emails (Plaintiffs' Proposed Exhibits 43 through 49 and 51): Defendant objects to these emails as they contain irrelevant information, hearsay, and are not properly authenticated without the author's testimony.

Plaintiffs' Proposed Exhibit 50: Defendant objects to this exhibit on the grounds that any introduction of this exhibit will require extensive foundation to be laid by the personnel involved in the experiment depicted.

Plaintiffs' Proposed Exhibit 52: Defendant objects to all of the autopsy photos being introduced as doing so would be cumulative and prejudicial to Defendant. Defendant does not object, and has included an entry in its list, to the introduction of some of these photos. The parties can likely agree as to the autopsy photos to be admitted and may make them and other documents which appear on both lists joint exhibits prior to trial.

Authenticity: In addition to the above objections, Defendant objects to the authenticity of and does not stipulate to the authenticity of the following proposed Exhibits: 2 and 6 (without some finite identification of what these may be – the description provided is open-ended), 13, 15, 16, 17, and 50.

## Attachment "G-2"

## DEFENDANT'S EXHIBIT LIST

| | Exhibit No. | Exhibit Name/Description |
|---|---|---|
| | 1 | Lease Application for Romello Harris and Shaneka Benton for Unit 384 (CE 1709-1721) |
| | 2 | Leases for Unit 384 (CE 1722-1726, 1730; 1736-1745; 1752-1758; 1774-1776) |
| | 3 | Medical Examiner's Autopsy Report and Investigative Summary (CE[1] 0002-0013) |
| | 4 | One or more of the photos from the autopsy. |
| | 5 | Toxicology Results on samples from Tijuana Frazier (CE 0017-0019) |
| | 6 | Photos of the scene (CE 1855-1965 or 1964-2067) |
| | 7 | Plaintiffs' Responses to Defendant's First Request for Admissions |
| | 8 | Plaintiffs' Responses to Defendant's Second Request for Admissions |
| | 9 | Plaintiffs' Responses to Defendant's Third Request for Admissions |
| | 10 | Relinquishment of Rights as Parent and Natural Guardian in relation to Isaiah Jacob Alexander Frazier executed by Tijuana Frazier |
| | 11 | Relinquishment of Rights as Parent and Natural Guardian in relation to Julian Bryce Keshan Frazier executed by Tijuana Frazier |
| | 12 | Defendant's Security Logs from the Week of the Incident (CE 1098-1105) |
| | 13 | |
| | 14 | |

---

[1]      Defendant's documents were produced with the Bates label "Contour Eastwyck ######." For ease of reference Defendant shall refer to its Bates numbers herein as "CE ####."

| | **15** | |
|---|---|---|

**Plaintiffs' Objections to Defendant's Exhibit List:**

Plaintiffs object to Exhibits 1 and 2 as irrelevant, the lease and lease applications for the subject unit have no bearing on the issue of damages.

## JOINT EXHIBITS WHICH HAVE BEEN STIPULATED INTO EVIDENCE BY THE PARTIES

| | Exhibit No. | Exhibit Name/Description |
|---|---|---|
| | 1 | Records from the Social Security Administration (Bates labeled SSA 000001 through SSA 000710) |
| | 2 | Records from Emory Decatur Hospital (Bates labeled Emory Decatur Hospital 00001 through 02352) |
| | 3 | Records from Central State Hospital (Bates labeled CSH 000001 through CSH 000252) |
| | 4 | Records from Dekalb Community Service Board (Bates labeled Winn Way 00001 through 00089) |

## Attachment "H-2"

## DEFENDANT CONTOUR EASTWYCK, LLC'S TRIAL BRIEF

Defendant CONTOUR EASTWYCK, LLC ("Defendant") hereby files its Trial Brief, containing citations to legal authority concerning evidentiary questions and other legal issues which Defendant anticipates may arise during the trial of this case, respectfully showing the Court as follows:

## Preliminary Statement

Defendant has filed the following pending pre-trial motions regarding evidentiary and legal issues:

- Defendant's Motion for Partial Summary Judgment on Punitive Damages (DE 263);

- Defendant's Motion to Trifurcate Trial (DE 267); and

- Defendant's *Omnibus* Motion *in Limine* (DE 266).

Defendant adopts and reincorporates those motions as though fully set forth herein. Defendant notes that Plaintiffs have consented to trifurcation of the trial (see DE 278). Defendant submits herein additional briefing on other potential issues that may arise that have not already been addressed in Defendant's other filings.

## I.   EFFECT OF THE COURT'S ORDER STRIKING DEFENDANT'S ANSWER (DE 220).

On December 15, 2022, this Court entered its Order striking Defendant's Answer (DE 220). The effect of striking Defendant's Answer is that all *well-pled* factual allegations in the complaint are taken as true, save for the amount of unspecified damages. *Murillo v. Cape Coral Roofing & Sheet Metal, Inc.,* 2:19-cv-674, 2021 WL 7084730, at *3 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted as modified,* 19-cv-674, 2022 WL 92824 (M.D. Fla. Jan. 10, 2022). A default judgment, however, may only be entered "if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment." *Id.*  "While the court must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *Id.* Defendants are not held to admit facts that are not well-pled or to admit conclusions of law. *Id.*

To be well-pled, a complaint must provide the grounds for entitlement to relief. *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). This standard is derived from motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which is "equally applicable to a motion for default judgment." *Id.* Thus, a complaint requires more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Iqbal,* 556 U.S. at 678.) A

complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.' " *Id.*

Under the Federal Rules of Civil Procedure, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Id.* (citing Fed. R. Civ. P. 54(c)). Moreover, "if unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise." *Id.* (citing Fed. R. Civ. P. 55(b)(1)-(2)).   A defendant may still raise any defense bearing on the amount of damages in response to a motion for default judgment or upon hearing to determine the amount of unliquidated damages following entry of a default. *First Nat'l Bank of Oneida, N.A. v. Brandt,* 8:16-cv-51, 2017 WL 235181, at *3 (M.D. Fla. Jan. 18, 2017).

Default is "not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." *Loos v. Club Paris, LLC,* 684 F. Supp. 2d 1328 (M.D. Fla. 2010). Therefore, plaintiffs must still plead sufficient facts to form a basis for punitive damages. *Id.* Moreover, allegations regarding the amount or character of damages are not admitted by virtue of default. *Id.* Instead, the trier of fact should determine the amount and character of damages. *Id.* Further, in the event

the claim for punitive damages is not dismissed on summary judgment, the trier of fact would also assess the basis for any punitive damage award. *Id.* Therefore, even where a Defendant is sanctioned and a default judgment is entered against them on the merits, the default does not apply to punitive damages: the Court should still refuse to award punitive damages if not supported by the evidence. *See Johnson v. New Destiny Christian Center Church, Inc.,* 771 Fed. Appx. 991 (11th Cir. 2019) ("Even a sanctioned defendant must be permitted to contest the nature and extent of tis wrongdoing in the punitive-damages phase of trial.").

Put another way, a default judgment is conclusive only as to liability, and not as to damages, such that no award for punitive damages should be made where the plaintiff produces no evidence to support punitive liability. *Meehan v. Snow,* 494 F. Supp. 690 (S.D.N.Y 1980), *rev'd on other grounds Meehan v. Snow,* 652 F.2d 274 (2d Cir. 1981). *See also Drug Emporium, Inc. v. Peaks,* 227 Ga. App. 121 (1997) (holding that where the complaint failed to allege a viable claim for punitive damages, default alone was not sufficient to authorize an award of punitive damages, and the plaintiff failed to introduce evidence on liability for punitive damages at a hearing did not support an award of punitive damages).

Accordingly, here the following issues are not deemed admitted or established by virtue of this Court's Order striking Defendant's Answer and remain at issue for

trial: (1) the amount and extent of available compensatory damages under Georgia's Wrongful Death Act and under Plaintiffs' survival claim for Ms. Frazier's pre-death pain and suffering; (2) entitlement to punitive damages and the application of Georgia's statutory cap on punitive damages; and (3) the amount of punitive damages, if any.

## II.   ADMISSIBILITY OF MS. FRAZIER'S MEDICAL RECORDS

The parties have stipulated to the authenticity and admissibility of Ms. Frazier's medical records for any and all purposes at trial.  *See* Stipulation of the Parties. These records include Social Security Administration, Bates labeled SSA 000001 through SSA 000710; Emory Decatur Hospital, Bates labeled Emory Decatur Hospital 00001 through 02352; Central State Hospital, Bates labeled CSH 000001 through CSH 000252; and Dekalb Community Service Board, Bates labeled Winn Way 00001 through 00089.

Further, these records are undoubtedly relevant to the issues in the case, including recoverable damages under Georgia's Wrongful Death Act, which is measured by the "full value of the life of the decedent, as shown by the evidence." *Brock v. Wedincamp,* 253 Ga. App. 275, 276 (2002) (citing O.C.G.A. § 51-4-2(a)). This includes issues related to Ms. Frazier's ability to provide support and services to her minor children as well as her ability to obtain employment or her lost future

earning capacity.  *See id.* The jury can consider a variety of factors to include the decedent's health, labor, habits, how long she would probably live and work, relationships, circumstances of the family, living conditions, and other intangibles such as a parent's society, advice, example, and counsel. *Id.* at 280-281. Further, the measure of damages is from the decedent's point of view. *Id.* Indeed, the "range of proof in determining the full value of a deceased's life is broad . . . ." *Key v. Grant*, 238 Ga. App. 818, 819 (1999). *See also  Alvista Healthcare Ctr., Inc. v. Miller*, 296 Ga. App. 133, 137 (2009), *aff'd*, 286 Ga. 122 (2009) ("the decedent's medical records are certainly relevant" to decedent's spouse's representation in bringing a wrongful death claim). Therefore, Ms. Frazier's medical records which have bearing on nearly every potential consideration at issue when considering recovery under Georgia's Wrongful Death Act are relevant and admissible.

## III.   POTENTIAL RECOVERY OF PUNITIVE DAMAGES ON PLAINTIFFS' WRONGFUL DEATH AND SURVIVAL CLAIMS

Plaintiffs bring a claim under Georgia's Wrongful Death Act on behalf of Ms. Frazier's surviving children and also seek to recover on behalf of Ms. Frazier's Estate for her pre-death pain and suffering. *See, e.g.,* Complaint. Under Georgia law, punitive damages are not recoverable under a wrongful death claim. *See Ford Motor Co. v. Stubblefield,* 171 Ga. App. 331, 340 (1984). The Wrongful Death Act covers damages including the "full value of the decedent's life," to be distributed to Ms.

Frazier's surviving children, *see* O.C.G.A. § 51-4-2, and also separately provides for recovery of the medical and funeral expenses on behalf of the Estate. O.C.G.A. § 51–4–5(b); *See also Carroll Fulmer Logistics Corp. v. Hines,* 309 Ga. App. 695, 697 (2011), *overruled on other grounds by Auld v. Forbes*, 309 Ga. 893 (2020) ("Under O.C.G.A. § 51–4–5(b) of the wrongful death act, the decedent's personal representative also has the right to recover for "funeral, medical, and other necessary expenses resulting from the injury and death of the deceased person.").

On the other hand, the Estate's common law survival claim may qualify for separate recovery of punitive damages if there is evidence of Ms. Frazier's pre-death pain and suffering. *See Donson Nursing Facilities v. Dixon,* 176 Ga. App. 700, 702 (1985). Indeed, it is "clear [] that a survivor's statutory claim for a decedent's wrongful death and an estate's common-law claim for the same decedent's pain and suffering are distinct causes of action." *Mays v. Kroger Co.,* 306 Ga. App. 305, 306 (2010). To this end, punitive damages may only be recoverable in connection with the administrator of the Estate's common law survival claim for the decedent's pre-death pain and suffering, if any. *Donson,* 176 Ga. App. at 702 ("punitive damages may be awarded to the administrator of the estate in connection with the injuries, pain and suffering of the deceased.").

Where there is no evidence of pre-death pain and suffering the defendant should be entitled to judgment as a matter of law on the Estate's survival claim for pre-death pain and suffering. *Grant v. Georgia Pac. Corp*., 239 Ga. App. 748, 749 (1999) ("As against the estate, the grant of summary judgment is correct because there is no evidence to support any award of damages for the deceased's pain and suffering."). Accordingly, the Estate cannot recover punitive damages in this case if they are unable to recover under their survival claim for pre-death pain and suffering. *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1357 n. 8 (11th Cir. 2008) ("[U]nder Georgia law, neither an O.C.G.A. § 13-6-11 attorney's fee claim nor an O.C.G.A. § 51-12-5.1 punitive damages claim can survive without an award of relief on an underlying claim); *Atlanta Glob. Res., Inc. v. First Ins. Funding Corp.,* 18-CV-01932-AT, 2019 WL 3557891, at *11 (N.D. Ga. Mar. 26, 2019); *see also Velez v. Bethune*, 219 Ga. App. 679, 689 (1995) (J. Andrews dissenting) ("in the absence of any basis for concluding that Dr. Velez took actions which caused the child to experience pain and suffering, there is no support for the recovery of punitive damages in connection with any injuries or pain and suffering.") (citing *Donson*).

Therefore, if Plaintiffs are unable to establish that Ms. Frazier suffered conscious pre-death pain and suffering leading up to or at the time of her death in

support of their survival claim, then Plaintiffs are unable to recover under this theory

and will have no basis to pursue a claim for punitive damages as a matter of law.

## Attachment "I"

## VERDICT FORM PROPOSALS

## By Plaintiffs:

Phase 1:

1.

We, the jury, find for Plaintiffs in the amount of $_____

2.

Plaintiffs are entitled by law to recover punitive damages against Contour Eastwyck, LLC

_____ (YES)                          _____ (NO)

Phase 2:

We, the jury, find the amount of punitive damages is $_____

## By Defendant:

Phase I:

We, the jury, find in favor of Plaintiffs and against Defendant Contour Eastwyck, LLC in the amount of _____ in compensatory damages for the full value of the life of Tijuana Frazier.

We, the jury, find in favor of Plaintiffs and against Defendant Contour Eastwyck, LLC in the amount of _____ in compensatory damages to the Estate of Tijuana Frazier for conscious pain and suffering, if applicable.

Phase II (if Defendant's Motion for Partial Summary Judgment is not granted):

_____ We, the jury, DO NOT find by clear and convincing evidence that Defendant Contour Eastwyck, LLC's showed willful misconduct, malice, fraud,

wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

(If the above block is checked, stop here.)

_____ We, the jury, DO find by clear and convincing evidence that Defendant Contour Eastwyck, LLC's showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

(If the above block is checked, please go to the next question.)

Do you find that Defendant Contour Eastwyck, LLC acted, or failed to act, with the specific intent to cause harm in relation to Tijuana Frazier?

_____                    _____
Yes                              No

Phase III:

We, the jury, award punitive damages to the Estate of Tijuana Frazier against Defendant Contour Eastwyck, LLC in the amount of _____.

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE WITH L.R. 5.1</u>

This is to certify that I have this day served the foregoing document by electronic mail to all counsel on the Service List below.  This is to further certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1. It is prepared in Times New Roman 14-point font.

Dated this 25th day of April, 2023.

<u>/s/ John M. Hawkins</u>
Ga. Bar No. 338698