UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MILDRED COLLINS-WILLIAMS as administrator of the estate of TIJUANA FRAZIER and as guardian and next friend of Quanisha Holt, a minor, and PEBBLES MCCLAIN as guardian and next friend of Julian Frazier and Isaiah Frazier, minors,<br><br>    Plaintiffs,<br><br> v.<br><br>CONTOUR EASTWYCK, LLC,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>1:20-CV-3129-CAP |

**O R D E R**

This action is before the court on the plaintiffs' fees submission [Doc. No. 247] and the plaintiffs' motion to supplement counsel's declaration in support of the fees submission [Doc. No. 358]. As an initial matter, the court will not consider the supplemental declaration because it pertains to events beyond the scope of the court's December 15, 2022 sanctions order [Doc. No. 220].

**I. Introduction**

On December 15, 2022, this court entered an order sanctioning the defendant and its former counsel ("the intervenors") for a staggering list of discovery abuses and other misdeeds that prevented the plaintiffs from

litigating this case on the merits [Doc. No. 220]. The answer was stricken and default was entered against the defendant. *Id.* Beginning on March 19, 2024, the matter was tried to a jury. On March 21, 2024, the jury returned a verdict in favor of the plaintiffs for compensatory damages totaling $1,858,548 [Doc. No. 351]. The jury further found that the plaintiffs were entitled to punitive damages and awarded $2,000,000 [Doc. Nos. 355, 357]. As required by Georgia law, the punitive damages award shall be reduced to $250,000. O.C.G.A. § 51-12-5.1(g).

In addition to the sanction of striking the answer, the court found that the defendant and the intervenors must pay the plaintiffs for all time spent by the plaintiffs' counsel that was "caused by, rendered useless because of, impacted by or necessitated because of the defendant's misdeeds." [Doc. No. 220], 362. Pursuant to the court's instructions, counsel for the plaintiffs made their fees submission on February 13, 2023 [Doc. No. 247], seeking fees in an amount between $294,945, and $448,000. The defendant and the intervenors filed responses on March 23, 2023 [Doc. Nos. 259, 260], arguing for a lower award of fees. The plaintiffs' counsel filed a reply brief on April 3, 2023 [Doc. No. 265]. Attached to the reply brief is an affidavit of Andrew Ashby [Doc. No. 265-1], filed by the plaintiffs' counsel to bolster the reasonableness of the amount of fees they are seeking. Because a reply brief may not be used to

provide new evidence, the court will not consider the Ashby affidavit. *See McCray v. Cellco P'ship,* No. 1:10-CV-2821-SCJ, 2011 WL 2893061, at *3 (N.D. Ga. Apr. 8, 2011).

Based on the evidence considered by the court, the plaintiffs are entitled to an award of reasonable attorney fees stemming from the misconduct of the defendant and the intervenors in a total amount of $232,740. The method by which the court arrived at this amount is set forth below.

## II. Standard of Review

Referred to as the "lodestar calculation," "[t]he starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Additionally, it is well settled that a court "is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

### III. Analysis

#### A. Reasonable Hourly Rate

The first step of the lodestar analysis is to determine a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (citing *Norman* 836 F.2d at 1299). The relevant legal community is the "place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

The party requesting its attorney fees "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger*, 10 F.3d at 781 (internal quotation marks omitted). The claimant can establish the reasonableness of hourly rates "by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (citing *Norman*, 836 F.2d at 1299) (emphasis omitted). "Alternatively, the court can rely upon its own experience to determine a reasonable fee even when faced with an inadequate fee application or fee rates which seem excessive, and the court should still award a fee where warranted." *Gibson v. Wash. Box, LLC*, No. 1:17-CV-1965-MHC (N.D. Ga. Mar. 5, 2019). What an attorney charges his paying clients "is powerful, and perhaps the best,

evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.' " *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Counsel's declarations on their own do not establish the reasonableness of the hourly rate. *See Norman*, 836 F.2d at 1299 ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work."). The only opinion evidence submitted with the initial fee petition is the declaration of Attorney Michael Rafi, lead counsel for the plaintiffs in this matter. Therefore, this court will consider only direct evidence of what amount of fees the plaintiffs agreed to pay their lawyers. In this case, the written contract between the plaintiffs and their attorneys provide that counsel would be paid on a contingent basis [Doc. No. 164-4]. However, the agreement contemplates an hourly fee amount in the event counsel were terminated prior to recovery. *Id.* Those amounts are $450 for Mr. Rafi and $300 for all other attorneys in Mr. Rafi's firm. *Id.* Additionally, the agreement provides for paying $100 per hour for support staff. *Id.*

In response to the fees submission, the defendant argues that the amount set forth in the agreement between counsel and client is the best evidence of what a reasonable hourly rate should be. [Doc. No. 259] at 19-21.

The intervenors have offered their own opinion evidence [Doc. No. 260-1] and point to their own hourly rates to argue that Mr. Rafi's hourly rate should be $300 and other attorneys in his firm should bill at $225 per hour [Doc. No. 260], 7-8.

Based upon its own expertise as well as the fee agreement, the court determines that the hourly rates for the plaintiffs' counsel shall be as follows:

    Mr. Rafi          $450

    Other Attorneys  $300

    Support Staff    $100.

Furthermore, the court finds no basis to increase the hourly rate over time as urged by the plaintiffs' counsel. Instead, the court will apply these rates statically to all time that is found to be reasonably expended because of the misconduct identified in the December 15, 2022 order.

### B. Reasonable Hours Expended

To support their submission for fees, counsel for the plaintiffs prepared a detailed spreadsheet that reconstructed the time spent at various stages of this litigation to provide this court with an estimate of time spent on the

relative tasks [Doc. No. 247-1].[1] The defendant and the intervenors object to the estimate of time on several grounds.

First, the defendant and the intervenors argue that many of the billing entries lack sufficient detail. *See* [Doc. No. 259], 12-15; [Doc. No. 260], 10-12. For the most part, the court rejects this argument. As explained by Mr. Rafi in his declaration [Doc. No. 247], this case was taken on a contingency basis, and contemporaneous billing records were not maintained. The court is frankly impressed with the level of detail contained in the spreadsheet. However, the final two entries, which reflect a period of time described as "Over months," are of concern. While it is without question that Mr. Rafi and Attorney Alex Brown spent time throughout this litigation conducting document review, considering case strategy, and discussing the same with each other, the number of hours sought here, 90 for Mr. Brown and 60 for Mr. Rafi, over an indefinite period of time is too tenuous. Furthermore, the court finds that these activities are, to some degree, subsumed in the delineated dates set out in the spreadsheet. Accordingly, the court will reduce the hours for the catchall time period of "Over months" to 45 hours for Mr. Brown and 30 hours for Mr. Rafi.

---

[1] The court notes that the recreation of this time was itself a time-consuming task required of the plaintiffs' counsel.

Second, the defendant and the intervenors argue that many entries by the plaintiffs' counsel reflect excessive time spent. The defendant delineates twenty-two examples where it contends the time spent was excessive, [Doc. No. 259], 7-12, and the intervenors set forth thirteen [Doc. No. 260], 12-14.[2] Generally, the court finds the estimates of time reasonable, but there are some entries the raise questions. For example, twelve hours spent by Mr. Brown and two by Mr. Rafi on May 21, 2021, working on the plaintiffs' motion to compel that was filed a week earlier appear inaccurate [Doc. No. 247-1], 4; [Doc. No. 126]. Also, the spreadsheet reflects that on July 7, 2021, Mr. Brown spent 20 hours drafting the plaintiffs' motion to compel forensic inspection and six more hours on the same date preparing for the deposition of Michael Hodge. [Doc. No. 247-1], 6. This total is impossible. And for February 7, 2021, the spreadsheet lists 24 hours of work by Mr. Rafi and 20 hours by Mr. Brown. Considering these obvious inaccuracies and questionable totals,[3] the court finds that an overall reduction of ten percent of total hours expended to be in order.

---

[2] Five of these examples overlap. *Compare* [Doc. No. 259], 7-12 *and* [Doc. No. 260], 12-14.

[3] The court does not imply that these mistakes are anything other than inadvertent. Again, the level of detail the plaintiffs' counsel was able to reconstruct without contemporaneous billing records is appreciated by the court.

Third, the defendant and the intervenors argue that many of the time entries are unrelated to the issues identified as recoverable by the court's December 15, 2022 order. *See* [Doc. No. 259], 15-17; [Doc. No. 260], 19-24. The defendant delineates eight examples where it contends the activity does not fall within Federal Rule of Civil Procedure 37(b)(2) in that the fees were not "caused by the failure" to obey a court order or to provide or permit discovery [Doc. No. 259], 15-17. The intervenors challenge twenty-seven time entries from the time log submitted, claiming that the plaintiffs have not shown the activities were necessitated by the discovery misconduct [Doc. No. 260], 19-24. Both the defendant and the intervenors read the court's December 15, 2022 order [Doc. No. 220] too narrowly. The court stated that the plaintiffs are entitled to be reimbursed for any and all time spent by their counsel that was "caused by, rendered useless because of, impacted by, or necessitated by" the misdeeds painstakingly identified by the court. [Doc. No. 220], 362. Furthermore, this sanction was authorized not only by Rules 37 and 26 but by this court's inherent authority to fashion a sanction to both vindicate judicial authority and to make the injured party whole. *See J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, No. 22-12461, 2024 WL 1904569, at *4 (11th Cir. May 1, 2024). Of course, causation is the linchpin in fashioning an award to compensate the plaintiffs for wasted attorney time. But, the Supreme Court

9

has advised that courts assessing fees "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 823, 838 (2011). "So 'rough justice' is the aim, not 'auditing perfection.'" *J.C. Penney Corp*, 2024 WL 1904569, at *4 (quoting *Fox*, 563 U.S. at 838). To that end, the court held that the plaintiffs could not recoup all fees expended up until the point of sanctions in the case. [Doc. No. 220], 361.[4] The court's "overall sense of [the] suit" is that the tasks for which the plaintiffs' counsel seeks reimbursement fall squarely within the parameters set out by the court. *J.C. Penney Corp.*, 2024 WL 1904569, at *4. Accordingly, no reduction of hours is warranted based on an alleged lack of relationship between the tasks listed and the misconduct by the defendant and the intervenors.

Fourth, the intervenors argue that the time entries reflect duplicative work. [Doc. No. 260], 14-19. Specifically, the intervenors challenge 98 hours of

---

[4] The court specifically excluded the following categories from recovery: drafting the complaint, answering the notice of removal, filing initial disclosures, preparing the JPRDP, participating in depositions noticed by the defendant, drafting initial discovery requests or responding to the defendant's discovery requests, drafting or conferring with opposing counsel regarding the motions to quash the defendant's subpoenas to T-Mobile and Ms. Frazier's healthcare providers, drafting or responding to issues surrounding the privacy and confidentiality of Ms. Frazier's phone or the criminal investigation file held by the DeKalb Police Department, or time spent in relation to the defendant's motion to compel. [Doc. No. 220], 361-62. The plaintiffs have not sought fees for any of these excluded tasks.

time by Mr. Rafi, claiming that it was redundant of work performed by Mr. Brown. *Id.* at 14. However, it is not inherently unreasonable to have more than one attorney; therefore, a reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). While the intervenors recognize this tenet, they criticize the plaintiffs' counsel for failing to show distinct contribution by each attorney. This criticism ignores the retroactive nature of the time log created by the plaintiffs' counsel. The log was generated many months to two years <u>after</u> the work was performed. Under this court's inherent power to craft a sanction for the egregious misconduct by the defendant and the intervenors, and based on this court's own expertise in what is a reasonable amount of time for multiple lawyers to expend to reach a common goal—particularly when it was this court that conducted the hearings and reviewed the actual work product related to the sanctions issues—the court rejects the intervenor's claim of redundant work.

Finally, the defendant and the intervenors contend that paralegal time is not recoverable. [Doc. No. 259], 17-18; [Doc. No. 260], 24-25. Fees for paralegal work are recoverable "to the extent that the paralegal performs work traditionally done by an attorney." *Gowen Oil Co. v. Abraham*, 511 F. App'x 930, 936 (11th Cir. 2013) (quoting *Jean v. Nelson*, 863 F.2d 759, 778 (11th

11

Cir.1988) (emphasis omitted)). Here, the plaintiffs seek to recover for 103.5 hours of paralegal time. In his declaration, Mr. Rafi described the work done by his firm's paralegal, Kacie Butcher, accounting for 100 hours of her time to include the following:

- drafting and filing certificates of service related to discovery responses, motions, and other filings;
- assisting the preparation of and overseeing service of subpoenas to third parties;
- assisting in finalizing and filing motions, briefs, and other filings;
- uploading and organizing documents received from the defendant and written discovery responses;
- scanning for important information;
- providing assistance in preparing for depositions;
- organizing and preparing documents identified for use as exhibits; and
- preparing for oral argument at hearings.
- assisting in finding information about witnesses defendant failed to disclose.

[Doc. No. 247], ¶ 46. This court has held that "[e]xamples of work not traditionally performed by an attorney includes "receiving, reviewing, and

indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents. *Hansraj v. Cooling & Winter LLC*, No. 1:19-CV-00259-CAP, 2019 WL 13212710, at *8 (N.D. Ga. Oct. 17, 2019) (citing *Whitney Bank v. Davis–Jeffries–Hunold, Inc.*, 2012 WL 5470131, * 7 (S.D. Ala. Nov. 9, 2012) (collecting cases to determine what is not compensable time for the purposes of a fee petition). Most of what Mr. Rafi describes in his declaration regarding Ms. Butcher's work does not fall into the category of work traditionally performed by an attorney. Rather, it is more in the nature of support, administrative, and clerical work.  Therefore, the court will reduce the number of hours for paralegal time to from 103.5 to 9.

### C. Summary

As set forth above, the court has determined the appropriate hourly fees for the work performed as well as a reasonable number of hours expended. That leaves only a mathematical calculation to determine that amount of fees the plaintiffs are entitled to recoup due to the misconduct the court identified in its December 15, 2022 order [Doc. No. 220]. That calculation is set forth below:

| | | | | |
|---|---|---|---|---|
| Mr. Rafi | $450/hr | X | 213.4 hours = | $ 96,030 |
| Other Attorneys | $300/hr | X | 452.7 hours = | $135,810 |
| Paralegal | $100/ hr | X | 9 hours = | $      900 |
| | | | | $232,740 |

## IV. Conclusion

Based on the foregoing, the court awards attorney fees to the plaintiffs and against the defendant and the intervenors, jointly and severally, in the amount of $232,740.

The plaintiffs' motion to supplement counsel's declaration supporting the fees submission [Doc. No. 358] is **DENIED**.

The only outstanding issue in this matter is approval of the settlement between the plaintiffs and the defendant's primary insurer. On January 26, 2024, this court instructed the plaintiffs to attain a conservator through the appropriate Probate Court to address Ms. Holt's financial interests in the settlement [Doc. No. 318]. Upon appointment of a conservator, the plaintiffs are to refile their motion for approval in this court. Once the settlement has been approved, the court will enter final judgment in this case.

**SO ORDERED** this 9th day of May, 2024.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge